RACHEL M. PALMER *vs.* HENRY F. BLANCHARD, Administrator.

Lincoln.    Opinion June 8, 1915.

*Agent.    Change of Date.    Expert.    Forgery.    Material Alteration.    Newly*
*Discovered Evidence.    Promissory Notes.    Signatures.*
*Special Findings.    Witness.*

1.   The defense being forgery, the plaintiff was obliged to prove, by a preponderance of the evidence, that the signatures were genuine signatures, and testimony that they were forgeries should be clear and convincing.

2.   The commission of crime is so improbable that, under such circumstances, the law requires stronger proof to justify a verdict that in effect fastens upon the plaintiff the felonious crime of forgery than is required to prove a defense that imports no crime.

3.   The plaintiff having introduced the notes signed by George E. Trask, containing the words "value received," could rely upon the presumption of law as proof of consideration, for the words "value received" are equivocal to proving an admission by George E. Trask, in his lifetime, that there was an original consideration for the notes.

4.   The opinion of handwriting experts in some cases are of great assistance. Their experience and studies have so qualified them that, from a comparison of the disputed writings with admitted standards, they can detect peculiarities in writings that might escape the observation of one with less experience.

5.   The fact that they are qualified to testify as experts only qualifies them to give an opinion of the genuineness of the handwriting.

6.   Unless they can state reasons for their opinions that may be considered by the jury, their opinions are entitled to but little weight.

7.   A material alteration of a note by a party holding it after it was made and delivered would be a good defense.

8.   Such alteration would be a fraud, but as fraud is not to be presumed, it must be proved.

9.   It was for the jury to determine from the evidence whether such alteration was made at the time of delivery of the note, or afterwards.   If altered after the signing and delivery, it would vitiate the note; if before, it would not.

On motion by plaintiff.    Motion sustained; new trial granted.

This is an action of assumpsit on two promissory notes, one dated April 1, 1908 for $2400, purporting to be signed by George E. Trask

and Trask Brothers, and the other dated October 30, 1908 for $3600, purporting to be signed by George E. Trask and Trask Brothers, both notes payable to the plaintiff.  Plea, the general issue and brief statement alleging that said notes were without consideration, that same was obtained by deceit and fraud.  Defendant also filed an affidavit denying signatures.  The jury returned a verdict for the defendant, and plaintiff filed a general motion for a new trial and also a motion for a new trial on the ground of newly discovered evidence.

The case is stated in the opinion.

*Henry W. Oakes and Joseph B. Reed,* for plaintiff.

*A. S. Littlefield and C. L. Macurda,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, KING, HALEY, HANSON, PHILBROOK, JJ.

HALEY, J.  An action of assumpsit upon two promissory notes alleged to have been given by George E. Trask in his lifetime, one dated April 1, 1908, for $2400 payable to the plaintiff or order in one year from date, purporting to have been signed by George E. Trask and Trask Bros., a firm composed of said George E. Trask and Henry Trask, and witnessed by B. A. Bailey; the other dated October 30, 1908, for $3600, payable to the plaintiff or order, purporting to have been signed by George E. Trask and Trask Bros. and witnessed by Henry A. Bailey.  The case was tried at the April term of the Supreme Judicial Court in Lincoln County, the verdict was for the defendant, and the jury returned special findings; that the signatures of George E. Trask to said notes were not genuine signatures of said George E. Trask; that there was no consideration for the notes; that both notes were materially altered after the delivery without the knowledge or consent of said George E. Trask, and the case is before this court upon a motion to set aside the verdict as against law and evidence, and upon a motion for a new trial upon the ground of newly discovered evidence.  If the evidence authorized either of the special findings, the general verdict for the defendant was right; if it did not, the general verdict was wrong and it is necessary to consider each of the special findings.

George E. Trask and Henry L. Trask, his brother, for many years before the death of George were engaged in the lumber business, and owned and operated mills, one of them situated at Alna, was purchased of the plaintiff as administrator of her husband's estate. They were both old men at the time of the transaction in question, and George E.'s eyesight was so impaired that he could not read, but he was able to drive a team and he attended to the operation of the mills and made his home with the plaintiff. Henry L. Trask was old and infirm, and did not attend to the financial part of the business, and never, until after the death of George E., signed any notes or checks. The plaintiff kept the books of the firm, wrote the letters and made out the checks for George E. to sign, boarded the men employed in the mill, paid off the help, and took charge in part of the operation of the mill, giving orders and directions to the help. Henry L. claims that, a few hours after the death of George, he went to the plaintiff's home and that during his visit the plaintiff informed him that she had two notes of George E., and at other times she referred to the notes and stated that they were given her by George E. in payment of the amount due her, and also stated, in substance, that she had an arrangement with George whereby she was to share in the profits of the business.

The plaintiff was not allowed to testify to events that took place before the death of George E. Trask, and did not recall the statement testified to as having been made by her after the funeral, but stated that they had talk about the notes, and then they were spoken of as the notes of George E., and afterwards there were other conversations in the presence of others at one of which it is claimed that Henry L. stated that George E.'s estate could not pay the notes, and that afterwards the plaintiff stated that the notes were signed not only by George E. but also by Trask Bros., and she afterwards let the agent of the defendant make a copy of the notes.

The defense being forgery, the plaintiff was obliged to prove, by a preponderance of the evidence, that the signatures were genuine signatures, and testimony that they were forgeries to establish the defense should be clear and convincing, for death and the law had sealed the lips of the alleged maker and payee, and the commission of crime is so improbable that under such circumstances the law requires stronger proof to justify a verdict that in effect fastens upon the plaintiff the felonious crime of forgery than is required to prove a

defense that imports no crime "because the improbability or presumption to be overcome in one case is much stronger than it is in the other." *Decker* v. *Ins. Co.*, 66 Maine, 406; *Ellis* v. *Buzzel*, 60 Maine, 211.

Were the signatures to the notes genuine? It was admitted that the plaintiff filed in the Probate Court, in writing supported by her affidavit, a claim against the estate of George E. Trask, describing the notes produced at the trial, and that the body of the notes was in the handwriting of the plaintiff. Benjamin A. Bailey testified that he signed, with his fountain pen, the first note as a witness at its date, at the request of George E. Trask, who signed it in his presence and in the presence of the plaintiff, a sister to the witness. It appears in the case that Mr. Trask was an aged man and that his eyesight was very much impaired, but that he did business and signed notes and checks. The testimony of this witness is clear and positive, and is only criticised as to the date, because it is claimed that he did not deliver nursery stock for a month after the date, but the witness did not state he was delivering nursery stock at that time. Henry A. Bailey testified that he signed the note dated October 30, 1908, as a witness, at the request of George E. Trask, who signed it with a fountain pen in his presence and in the presence of the plaintiff, the witness's sister, and that the note was read by the plaintiff to said Trask before it was signed and that the witness read it before he signed it, and his memory seems to be clear as to the transaction.

The defense called upon this branch of the case but one witness, a handwriting expert, who testified that in his opinion the signatures of both George E. Trask and Trask Bros. to the notes were not genuine signatures, and that the signatures of Trask Bros. were written a long time after the notes and the signatures of George E. Trask, and attacked the signatures on two grounds, (1) comparison of the appearance of the signatures in respect to form, claiming that details of the different letters differ from the standards, (2) difference in age of signatures with respect to time of writing by comparison of mental models of different periods, and by difference of ink with respect to age on the paper. His testimony is very lengthy, taking up sixty pages of the report, and is sharply attacked by the plaintiff.

It is urged that, for the purpose of creating confidence in his opinion, he, in the presence of the jury, analyzed specks of ink on the notes in question, and the jury examined by the aid of a compound microscope

furnished by the witness the result of the chemical analysis, and it appears from his examination that all the analysis determined was the kind of ink, and had no tendency to prove that the signatures were not genuine, because all writings upon the note were of the same kind of ink and the witness knew it, because he had previously examined the writings; that many of the peculiarities that he testified to in the disputed signatures were not peculiarities, and a careful comparison of the disputed signatures with the admitted standards shows that the standards had in many instances the same peculiarities that he testified the disputed signatures had, and the finding of which caused him to give his opinion that the signatures were not genuine. That, as one of the reasons for his opinion that they were not genuine signatures, was the positions and measurements of certain letters in the disputed signatures, and that an examination of these letters shows that his statement in reference to them is not true.

We cannot in this opinion go at length into all the details and claims of this witness, or the answer of the plaintiff thereto, but the plaintiff called two handwriting experts who gave it as their opinion that the signatures were genuine, and counsel in their arguments have not called our attention to any statement made by them which can be examined and found untrue.

That the opinions of handwriting experts in some cases are of great assistance cannot be questioned. Their experience and studies have so qualified them that, from a comparison of the disputed writings with admitted standards they can detect peculiarities in the writings that might escape the observation of one with less experience, and their opinions, based upon an examination, are sometimes entitled to great weight; but the fact that they are qualified to testify as experts only qualifies them to give an opinion of the genuineness of the handwriting, and unless they can state reasons for their opinions that may be considered by the jury, their opinions are entitled to but little weight, and if they state to the jury as reasons for their opinion that certain facts exist which do not exist, peculiarities of the handwriting that an examination shows to be untrue, their opinion is entitled to but little, if any, weight. The jury are the judges of the facts and any opinion given by an expert is to be weighed by them, and if an examination of the writings shows that the reasons given by the expert for his opinion are not justified, in weighing his opinion the reasons which he gives for it should be con-

sidered, for "the value of an opinion may be much increased or diminished in the estimation of the jury, by the reasons given for it." *Heald* v. *Thing*, 45 Maine, 397. And, as stated in Forgeries and False Entries, Hingston, page 80, "If the expert has a good case he need ask no favors; he can demonstrate the strength and prove the reasonableness of his deduction in the face of the opposing opinion of one or a dozen," but in this case the witness for the defense has not demonstrated the strength or proved the reasonableness of his deduction, for a careful reading of his testimony and comparison of the disputed signatures, with the admitted handwriting of Geo. E. Trask shows that the differences and peculiarities he points out also exist in the admitted signatures; that the standards differ from each other the same as the disputed signatures differ in some respects from some of the standards; that the differences are only such as can be discovered in the different writing of most people, and convinces us that his opinion is not entitled to credence, that overcomes the proof furnished by the writings themselves; the opinion of the two experts called by the plaintiff, and the testimony of the two subscribing witnesses. That his opinion, with the reasons given for it, is not that clear and convincing proof required by law to establish a defense that necessarily proves two forgeries, participated in by the two subscribing witnesses, and the crime of perjury by the subscribing witnesses.

CONSIDERATION. The plaintiff having introduced the notes signed by Geo. E. Trask containing the words, "value received," until other evidence was introduced, could rely upon the presumption of law as proof of consideration, for the words "value received" are equivalent to proving an admission by Geo. E. Trask in his lifetime that there was an original consideration for the notes. It is prima facie evidence of a consideration, sufficient, if not rebutted, to maintain the plaintiff's case upon this branch, and if the defendant would avoid the effect of such prima facie case he must produce evidence of equal or greater weight to balance or overcome it. *Small* v. *Clewley*, 62 Maine, 156; *Powers* v. *Russell*, 13 Pick., 76. To overcome the presumption of consideration, the defendant offered testimony that, when the plaintiff was asked about the notes, she said it was profit on the Breman lot; at another time she said it was her part of the profits of the Breman lumber operation and from logs they bought; and that the Breman operations were not finished when the notes were given. That, at another time, she stated that they represented

profits in the lumber business for about four years, at which time she claimed to have had an interest in the business for the four years. The plaintiff testified that she stated at those interviews that she and Geo. E. Trask settled her claim by the notes in suit.   The statements by the plaintiff of the consideration are not inconsistent with her claim.   They do not appear to have been full statements, and the witness evidently testified to but a part of the conversation.   No evidence was offered of any payment, but the notes, for the services that it is not denied she performed.   There is no evidence of any agreement between the plaintiff and Geo. E. Trask for her to share in the profits, except as it may be gathered from her statements and the giving of the notes, but if she was not to share in the profits, she was entitled to what her services were reasonably worth, and by the notes it appears they agreed she was entitled to the amount stated in the notes and no legal inference can be properly drawn from the parts of her statements as testified to by the witness strong enough to over-. come the prima facie case made by the admission in the notes of a consideration.   Further, the jury having found that the signatures of Geo. E. Trask to the notes were not his genuine signatures, necessarily had to find that there was no consideration for the notes; that is, the jury having found the signatures to be forgeries, would base their finding of no consideration upon that finding, and as the first finding was wrong the second finding, based upon the first, of no consideration, was unauthorized.

ALTERATION.   The defendant claims that the words "Trask Bros." upon both notes were written more than one year after the signature of Geo. E. Trask, and if true, it would be a material alteration that would defeat a recovery upon the notes.   This claim is supported only by the opinion of the handwriting expert who testified that the signatures of Geo. E. Trask were not genuine.

The same examination and comparison of the writings and of the testimony of this expert, upon this branch of the case that we gave to his testimony upon the genuineness of the signature of Geo. E. Trask, leads us to the same conclusion, that his opinion is not that clear and convincing proof required by law to establish a defense that in effect fastens upon the plaintiff and the subscribing witnesses the commission of a felonious crime.

CHANGED DATE.   The note dated April 4, 1908, shows that where the figure "8" now is something has been erased and the figure "8"

made over it, and the plaintiff claims that was a material alteration, and that the burden is upon the plaintiff to show what the alteration was, and, if material, to show that it was not made after the note was delivered, or made without the consent of the maker. The rule is stated in *Simpson* v. *Davis*, 119 Mass., 269: "Proof or admission of the signature of a party to an instrument is prima facie evidence that the instrument written over it is the act of the party; and this prima facie evidence will stand as binding proof, unless the defendant can rebut it by showing, from the appearance of the instrument itself, or otherwise, that it has been altered." Quoted with approval in *Bank* v. *Harriman*, 68 Maine, 523. "Where the plaintiff declares upon a note and offers it in evidence against the maker, there is a burden upon him to satisfy the jury that an apparent alteration of the note was made before delivery. This arises from the general burden of proof, which the plaintiff has to sustain, to show that the note declared upon is the genuine, valid promise of the defendant, therefore, if there is evidence each way, upon a question of alteration, the preponderance must be in favor of the plaintiff. . . . . But the paper itself, unaided by other evidence may satisfy the jury, or it may not. All depends upon circumstances. Alterations are rarely alike. The alteration may be immaterial or comparatively so, or beneficial to the maker, or made with the same pen and ink as the body of the instrument. On the other hand, the alteration may present indications of fraud and forgery. Whether or not is a question of fact and not of law. . . . . It is said that alterations prima facie indicate fraud. It is sure it does not in all cases. What alterations or degree or kind of alterations may exist without being suspicious enough to demand explanation is for the jury to settle. *Dodge* v. *Haskell*, 69 Maine, 429. There is no presumption of law either way. *Crabtree* v. *Clark*, 20 Maine, 337.

It is common knowledge that wrong dates of instruments are frequently written, erased and new dates added before the instrument is completed, and there is nothing about this erasure to indicate anything to the contrary.

*Gooch* v. *Bryant*, 13 Maine, 386, was an action upon a promissory note and the defense was a material alteration, and the court instructed the jury, "that a material alteration of a note by the party holding it after it was made and delivered would be a good defense; that such alteration would be fraud, but as fraud was not to

be presumed but must be proved, it was for the jury to determine from their evidence whether such alteration was made at the time of the delivery of the note, or afterwards, and that the alteration would not vitiate the note, unless they were satisfied from the evidence that it was made after the signing and delivery." The verdict was for the plaintiff, and the court said in the opinion: "There was no other evidence of the alteration of the note, than what arose from inspection, from which it appeared, that one of the figures in the date had been altered. Of the fact there could be no doubt; but the more important inquiry was, when it was done. If altered after the signing and delivery, it would vitiate the note; if before, it would not. As to the time, no evidence was offered by either party.. The alteration was not in itself proof that it was done after the signature; it might have been done before. If the alteration was prima facie evidence that it was done after, it must be upon the ground that such is the presumption of laws. But we do not so understand it. It would be a harsh construction; exposing the holder of a note, the date of which had been so altered as to accelerate payment, or to increase the amount of interest, to a conviction of forgery, unless he could prove that it was done before the signature. It would be to establish guilt by a rule of law, when there would be at least an equal probability of innocence." And it was held that the instruction was proper.

The defendant offered as evidence upon this branch of the case the opinion of the same handwriting expert, that the figure "8" was placed on the note after the figure "9" had been erased and some years after the other figures, and the defendant contends that that opinion, together with the appearance of the note, should authorize the jury to find a material alteration in the note after its delivery. If there was no other evidence in the case, we doubt if the jury would have been authorized to find an alteration by erasing one figure and putting over it the figure "8" after the note was signed by Geo. E. Trask. Suspicion is not proof, and the opinion of the expert upon this branch of the case, as upon the others, does not seem to be entitled to sufficient weight to establish forgery, and as opposed to the opinion of the expert there is the positive testimony of the subscribing witness that he signed it as a subscribing witness the day of its date, at the request of Geo. E. Trask, who signed it in his presence, and the argument of counsel attacking the testimony of the subscribing witness is that he is mistaken a month at least in the time when he witnessed it;

but it is immaterial if he did not witness it upon the date it bears; if Geo. E. Trask signed it the day he witnessed it, it was Geo. E. Trask's note, and that testimony is unimpeached and unquestioned, except by the opinion, of doubtful value, of the expert who, it appears to the court, was wrong in his other conclusions, and that opinion was not sufficient, in view of the law and the testimony of the subscribing witness, to authorize the finding that the note was materially changed after its delivery.   As there was not evidence that authorized either of the special findings of the jury, necessarily there was not evidence that authorized the general verdict for the defendant, and it is unnecessary to consider the evidence filed in support of the motion for a new trial upon the ground of newly discovered evidence, as the entry upon the general motion must be,

*Motion sustained.   New trial granted.*