*append.*
ENTERED FEB 1 2 2015

STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-11-209
YOR-JON- 02-10-15

JO ROSEN JOHNSON, Personal
Representative of the Estate of
William I. Johnson,

Plaintiff,

v.

ORDER

DANA E. JOHNSON,
LINDA J. OUELLETTE,
ESTATE OF EMERSON JOHNSON,
ESTATE OF ETHEL IRVING,
JOYCE STOBO, and
SALEM ADVISORY GROUP, LLC,
Defendants,

H. BECK, INC., and
JO ROSEN JOHNSON,

Third-party Defendants,

ELEANOR PHINNEY,

Party-in-interest and Cross-claimant.

## I. Background

### A. Procedural Posture

Before the court are motions for summary judgment by Defendants Dana
Johnson, Linda Ouellette, Joyce Stobo, Salem Advisory Group, LLC, and H. Beck, Inc.
Joyce Stobo and H. Beck also filed motions to dismiss. Originally named to this action as
a Party-in-interest, Eleanor Phinney ("Phinney") later filed a motion to amend her answer

1

to assert various crossclaims, which was granted. The Cross-claim Defendants have also moved for summary judgment. Plaintiff William Johnson[1] and Phinney oppose the motions for summary judgment. Despite the many parties and motions before the court, this entire controversy involves a pair of antique chairs and a securities account.

Specifically, Plaintiff William Johnson brings claims against Dana Johnson and Linda Oullette in four counts including (1) tortious interference with an expectancy or gift, (2) lack of capacity and unjust enrichment, (3) mistake of fact and misrepresentation, and (4) return of property. The second and third counts request the court to impose a constructive trust over the funds from the securities account at issue. Party-in-interest and Cross-claimant Eleanor Phinney asserts tortious interference with an expectancy or gift and unjust enrichment claims against Dana Johnson and Linda Oullette. Phinney also asserts cross-claims for tortious interference with an expectancy and breach of contract against Joyce Stobo, Salem Advisory Group, LLC, and H. Beck, Inc. William Johnson later amended his complaint to mirror several of Phinney's claims.

### B. Facts

Plaintiff William Johnson and Defendant Dana Johnson are the sons of Emerson Johnson. Emerson Johnson died on August 12, 2010. (Def.'s S.M.F. ¶ 2.)[2] In the wake of Emerson's death, a dispute arose over entitlement to a securities account and a pair of antique chairs. (Def.'s S.M.F. ¶ 1.)

### 1. The Securities Account and TOD Form

Emerson Johnson and Eleanor Phinney began dating in 1983. (Def.'s S.M.F. ¶ 46.) They remained a couple and lived together until shortly before Emerson Johnson's

---

[1] Jo Rosen Johnson, as personal representative of the Estate of William I. Johnson, has been substituted in this action.

[2] "Def." and "Defendants" refers to Dana Johnson et al. unless otherwise indicated.

2

death in 2010. (Def.'s S.M.F. ¶ 50.) Towards the end of Emerson's life, he was confined to a wheelchair and Phinney helped take care of him. (Def.'s S.M.F. ¶¶ 55-56.) Although Phinney never acquired a power of attorney for Emerson, she sometimes signed his name for him. (Def.'s S.M.F. ¶¶ 57-58.)

On August 31, 2009, Phinney drove Emerson to a meeting with Joyce Stobo, a financial advisor employed by Salem Advisory Group. (Def.'s S.M.F. ¶ 62.) The purpose of the meeting was to transfer Emerson Johnson's stock portfolio from Ameriprise Financial to H. Beck, Inc. (Def. Joyce Stobo S.M.F. ¶ 23.) At the meeting, among other documents, Stobo prepared an Individual Transfer on Death Account Agreement form ("the TOD form") for a securities account with an account number of 47G-239248. (Def. Joyce Stobo S.M.F. ¶ 26.) Stobo prepared the TOD form in Emerson and Phinney's presence. (Def. Joyce Stobo S.M.F. ¶ 28.) The TOD form called for 65% to be distributed to Phinney and 25% to William Johnson upon Emerson Johnson's death. (Def.'s S.M.F. ¶ 65.) It is unclear whether Emerson Johnson signed the TOD form or Phinney signed the form for him. (Pl.'s Resp. Def.'s S.M.F. ¶¶ 66, 68.) Phinney does not remember; she believes she could have signed the TOD form, but is not sure. (Eleanor Phinney Opp. S.M.F. ¶ 30.)[3] If Phinney did in fact sign the form, she maintains that she did so at Emerson's request. (Eleanor Phinney Opp. S.M.F. ¶ 33.) Joyce Stobo was not in the room when the TOD form was signed and did not review the papers after they were signed. (Def. Joyce Stobo S.M.F. ¶¶ 29-30.) The TOD form replaced a prior TOD form

---

[3] In her deposition, Phinney stated "I honestly do not know whether I signed or Emerson signed, and that's the God's honest truth, which is what thus all comes down to I guess . . . . I could have – I could have. I told – I told you that before. I'm not sure. I could have signed it, but I'm honest to God not sure." (Eleanor Phinney Dep. 37:20-23, 39:2-4.)

governing the securities account that called for half a million to be distributed to Phinney and the remainder to Dana Johnson. (Eleanor Phinney Opp. S.M.F. ¶ 22.)

After Emerson Johnson died, Dana Johnson met with Joyce Stobo and informed her that the signature on the TOD form was not Emerson's. (Def. Joyce Stobo S.M.F. ¶ 41.) Dana Johnson claimed that he had a handwriting expert confirm the signature was not Emerson's and showed Stobo signature samples for comparison, convincing Stobo that he was correct. (Def. Joyce Stobo S.M.F. ¶¶ 42-45.) Convinced the signature on the TOD form was forged and invalid, at Dana Johnson's request, Stobo transferred the balance of the account to the Estate of Emerson Johnson. (Def. Joyce Stobo S.M.F. ¶ 46; Eleanor Phinney Opp. S.M.F. ¶ 42.)

### 2. The Chairs

Emerson Johnson possessed two hand-carved antique chairs that dated to the 19th century. A former slave who lived on Strawberry Island off Kennebunk carved the chairs and later gave the chairs to Elsie Libby. (Def.'s S.M.F. ¶ 5.) Libby held the chairs until Emerson Johnson stole them from her in the summer of 1973. (Def.'s S.M.F. ¶¶ 17-18.)[4] The Johnsons never acquired lawful title to the chairs from Libby. (Def.'s S.M.F. ¶ 22.) In the 1980s, the chairs were moved to a barn owned by William and Emerson's mother, Ethel Irving, where William alleges he last saw them together. (Def.'s S.M.F. ¶ 27.) By 2007, only one of the chairs remained in Ethel Irving's barn. (Def.'s S.M.F. ¶ 32.) On February 3, 2008, Emerson Johnson hand-wrote a note that purported to gift the chairs to William Johnson. (Def.'s S.M.F. ¶ 37.) William Johnson does not currently know where

---

[4] The Defendants further allege that William helped his father steal the chairs. William denies this, but does not deny that his father stole them and does not allege that lawful title passed from Elsie Libby, but rather only vaguely references the acquisition. (Pl.'s Resp. Def.'s S.M.F. ¶ 22; Aff. William Johnson ¶¶ 6, 12, "The chairs were acquired by Emerson R. Johnson from Elsie Libby.")

the chairs are. (Def.'s S.M.F. ¶ 42.) Dana Johnson does not know where the chairs are and denies that he removed them from Ethel Irving's barn. (Def.'s S.M.F. ¶ 45.)[5]

## II. Discussion

### A. Summary Judgment Standard

"Summary judgment is appropriate if the record reflects that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Dussault v. RRE Coach Lantern Holdings, LLC*, 2014 ME 8, ¶ 12, 86 A.3d 52 (quoting *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646). "A material fact is one that can affect the outcome of the case." *McIlroy v. Gibson's Apple Orchard*, 2012 ME 59, ¶ 7, 43 A.3d 948 (quoting *N. E. Ins. Co. v. Young*, 2011 ME 89, ¶ 17, 26 A.3d 794). "Even when one party's version of the facts appears more credible and persuasive to the court, any genuine factual dispute must be resolved through fact-finding, regardless of the nonmoving party's likelihood of success." *Lewis v. Concord Gen. Mut. Ins. Co.*, 2014

---

[5] The Plaintiffs rebut claims by the Defendants that they do not know the whereabouts of the chairs by arguing that Dana Johnson admitted to taking them from Ethel Irving's barn. (Pl.'s Resp. Def.'s S.M.F. ¶¶ 32, 39.) The basis for this argument comes in part from Dana's deposition testimony:

Q: You did not remove the chairs?
A: No.
Q: Do you know if anyone did remove the chairs?
A: They apparently aren't there, so someone did.
Q: Do you know where the chairs are?
A: No.
Q: Do you recall ever admitting to your brother that you had the chairs?
A: Yes.
Q: Okay. Has your brother asked you to return the chairs?
A: Yes.
Q: Do you know where they are now?
A: No.

(Dana Johnson Dep. 25:10-23.) At most, this suggests Dana Johnson claimed to have possession of the chairs at some time in the past, but does not establish Dana actually took the chairs from the barn or has any knowledge of where the chairs are presently.

5

ME 34, ¶ 10, 87 A.3d 732. If facts are undisputed but nevertheless capable of supporting conflicting, plausible inferences, "the choice between those inferences is not for the court on summary judgment." *Id.*

## B. The Chairs

Count IV of the Plaintiff's complaint seeks a claim for "return of property" against the Defendants. (Compl. 9.) In their motion for summary judgment, the Defendants address this as a conversion claim, while Plaintiff's opposition appears to characterize the claim as one for replevin.

### 1. Conversion

A claim for conversion requires the plaintiff demonstrate "a property interest in the goods" and "the right to their possession at the time of the alleged conversion." *Bradford v. Dumond,* 675 A.2d 957, 962 (Me. 1996) (quotation marks omitted). "The converter need not intend any conscious wrongdoing,' but need only act with 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'" *Mitchell v. Allstate Ins. Co.,* 2011 ME 133, ¶ 15, 36 A.3d 876.

Plaintiff William Johnson maintains that he acquired rights in the chairs when Emerson Johnson gave them as an inter vivos gift, evidenced by a hand-written instrument dated February 3, 2008. (Def.'s S.M.F. ¶ 37.) William Johnson, the donee, has the burden of proof to establish the gift's validity. *Rose v. Osborne,* 133 Me. 497, 180 A. 315, 317 (1935). There is no evidence, however, that Emerson Johnson held lawful title to make that gift, and in fact, William does not controvert the assertion that Emerson Johnson stole the chairs. (Def.'s S.M.F. ¶¶ 17-18.); Me. R. Civ. P. 56 ("Facts contained in

6

a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").

As a result, the Plaintiff's conversion claim fails because he cannot establish that he acquired lawful rights to the chairs such that he is entitled to assert a conversion claim here.[6] *See Ocean Nat. Bank of Kennebunk v. Diment*, 462 A.2d 35, 39 (Me. 1983) (conversion requires defendant have "an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights."); *see also James v. Wood*, 82 Me. 173, 174, 19 A. 160, 161 (1889) (dismissing trespass action where plaintiff lacked legal title because moose at issue was trapped illegally). Without establishing that Emerson had lawful right to the chairs, the Plaintiff could not acquire lawful rights and therefore has no basis for a claim. *See Doughty*, 661 A.2d at 1122; *see also Landry v. Mandelstam*, 109 Me. 376, 376, 84 A. 642, 642 (1912) ("In order to maintain her [conversion] action, it was incumbent on the plaintiff to prove that she had title to the property, or was entitled to the immediate possession of it.").

Furthermore, there is no evidence in the record that Defendants even possess the chairs. The Plaintiff emphasizes statements allegedly made by the Defendants during the course of mediation discussions to prove the Defendants currently possess them. (Pl.'s Resp. Def.'s S.M.F. ¶ 45.) Pursuant to the confidentiality agreement that parties entered into prior to that mediation, any admission by Dana Johnson is inadmissible in this case. M.R. Evid. 408(b)(3). There is no evidence properly before the court that these chairs are

---

[6] Plaintiff attempts to circumvent this deficiency by citing cases from other jurisdictions for the proposition that a claimant need only show superior title to the holder of the property. (Pl.'s Opp. Def.'s Mot. Summ. J. 6-7.) This appears to be a minority position that has not been adopted in the State of Maine. *See Doughty v. Sullivan*, 661 A.2d 1112, 1122 (Me. 1995); *see generally* 90 C.J.S. Trover and Conversion § 60.

in the possession of the Defendants. The conversion claim fails as a matter of law. *Leighton v. Fleet Bank of Maine*, 634 A.2d 453, 457 (Me. 1993) (holding conversion claim failed because there was no finding that defendants had actual or constructive possession of the claimed chattels).

### 2. Replevin

While historically based in equity, Maine's replevin cause of action is statutory:

> When goods, unlawfully taken or detained from the owner or person entitled to the possession thereof, or attached on mesne process, or taken on execution, are claimed by any person other than the defendant in the action in which they are so attached or taken, such owner or person may cause them to be replevied.

14 M.R.S. § 7301. Setting aside the procedural issue of whether the plaintiff has properly asserted a writ of replevin, Plaintiff's claim fails for the same reason as the conversion claim—there is no proof that Plaintiff has title or a right of possession. Levin, 77 C.J.S. Replevin § 4 (stating "the plaintiff must prove that he or she has title or a right to possession"); *see also Doughty*, 661 A.2d at 1122 n.12 (noting in replevin, the court merely determines "whether the plaintiff may keep the property which has previously been delivered to the plaintiff pursuant to the writ of replevin").

Defendants are entitled to summary judgment on Count IV.

### C. The Securities Account and TOD Form

All remaining claims concern the securities account and TOD form. The parties dispute whether Emerson Johnson actually signed the TOD form at the meeting with Joyce Stobo. The parties further dispute the legal effect of Joyce Stobo's decision to transfer the TOD security account funds into the Estate of Emerson Johnson once confronted by Dana Johnson, who convinced Stobo that Emerson did not sign the form.

8

## 1. Interference With an Expectancy and Unjust Enrichment as to All Defendants

Both Plaintiff William Johnson and Cross-claimant Eleanor Phinney allege that the Defendants tortiously interfered with their expectations of an inheritance from Emerson Johnson's securities account. They also assert claims for unjust enrichment alleging that the Defendants gained a substantial benefit as a result of the tortious interference.[7] To prevail on a claim for intentional interference with an expectancy, a plaintiff must show:

> (1) the existence of an expectancy of inheritance; (2) an intentional interference by a defendant through tortious conduct, such as fraud, duress, or undue influence; (3) a reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference; and (4) damage resulting from that interference.

*Morrill v. Morrill*, 1998 ME 133, ¶ 7, 712 A.2d 1039. The fact a plaintiff is the child of the decedent is sufficient for a jury to infer the plaintiff had an expectation of an inheritance. *Id.* ¶ 8. A mere expectation that one will receive "some interest" also gives rise to the cause of action, which can be brought even before the testator has died. *Plimpton v. Gerrard*, 668 A.2d 882, 886 (Me. 1995). In addition to an inheritance from a testamentary bequest, other interests can form the basis for an expectancy. *Morrill v. Morrill*, 679 A.2d 519, 521 (Me. 1996) (noting any expected gift or profit from a transaction can be an "expectancy"). The tortious conduct need not be committed upon the decedent, but rather merely interfere with the decedent's intended plans, for example

---

[7] The parties fail to address the unjust enrichment count separately. Although often plead together, unjust enrichment is still a "separate and distinct claim." *DesMarais v. Desjardins*, 664 A.2d 840, 845 (Me. 1995). The court principally addresses the tortious interference claim because the unjust enrichment claim is contingent on a finding that it would be unjust for the defendants to retain the benefit they obtained from the alleged tortious interference. *See id.* (holding summary judgment grant was harmless because in order to prevail on unjust enrichment theory, plaintiffs would have had to show it was unfair to allow the defendants to retain the benefit of conveyance).

by interfering with the instrument that creates the expectancy.[8] The occurs most often when the tortfeasor conceals, destroys, or otherwise prevents enforcement of a will or other document that would have effectuated a gift to the plaintiff. *See, e.g., Allen v. Lovell's Adm'x*, 197 S.W.2d 424, 426 (Ky. Ct. App. 1946); *Morton v. Petitt*, 177 N.E. 591, 592-93 (Ohio 1931); *Creek v. Laski*, 227 N.W. 817, 820 (Mich. 1929).

Claimants William Johnson and Eleanor Phinney allege that Dana Johnson's and Joyce Stobo's actions that led to the transfer the securities to the Estate constituted intentional interference. The record is clear that had the TOD form executed on August 31, 2009 been enforced, William Johnson and Eleanor Phinney would have received distributions. Such a distribution would constitute a beneficial interest to support an expectancy. The TOD form was not enforced because Dana Johnson convinced Joyce Stobo the form was invalid and Stobo complied with his request to transfer the funds to the Estate. Viewing the facts in the light most favorable to the nonmovants, Dana Johnson's conduct was sufficiently fraudulent to support the tortious interference claim.[9]

---

[8] The Defendants argue mightily that because there is no allegation that fraud, undue influence, or other tortious conduct was committed *upon* Emerson Johnson, the tortious interference claim fails. This is too narrow a view of the tort. William Johnson and Phinney had a vested interest in the securities account based on the TOD form once Emerson Johnson died. The tortious interference *with the expectancy* that frustrated Emerson Johnson's intended recipients of the securities account is the relevant tortious conduct. *Harmon v. Harmon*, 404 A.2d 1020, 1024 (Me. 1979) ("[W]here a person can prove that, but for the tortious interference of another, he would in all likelihood have received a gift or a specific profit from a transaction, he is entitled to recover for the damages thereby done to him.") The functional effect of non-enforcement of the TOD form—which created a vested interest in the securities account—was the same was causing a testator "to revoke or alter a will, preventing him from making or revoking his will, or causing him to convey inter-vivos what would have passed through his will." *Burdzel v. Sobus*, 2000 ME 84, ¶ 13, 750 A.2d 573. This is because the securities account was not estate property, but became property of the beneficiaries upon Emerson Johnson's death. 18-A M.R.S. § 6-307.

[9] The basic elements of fraud require the following:

(1) A party made a false representation,
(2) The representation was of a material fact,

10

These facts are sufficient to make out a prima facie case of tortious interference. Ultimately, however, whether the form should have been enforced, and thus denied William Johnson and Eleanor Phinney an expectancy to which they were entitled, depends on the form's validity.

### a. Validity of the TOD form

#### i. Capacity

Several parties allege and put forth evidence that Emerson Johnson lacked capacity on August 31, 2009, when he executed the TOD form. The bar is relatively low for a party to have sufficient capacity. The law "requires only a modest level of competence and a general knowledge of one's assets." *In re Estate of O'Brien-Hamel*, 2014 ME 75, ¶ 28, 93 A.3d 689. "Testamentary capacity is an issue of fact." *In re Siebert*, 1999 ME 156, ¶ 6, 739 A.2d 365; *see also Appeal of Royal*, 152 Me. 242, 245, 127 A.2d 484, 486 (1956). The TOD form was not invalid as a matter of law because the parties dispute material facts regarding Emerson Johnson's capacity. The court cannot resolve this factual dispute on summary judgment.

#### ii. Execution

---

(3) The representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false,
(4) The representation was made for the purpose of inducing another party to act in reliance upon it, and
(5) The other party justifiably relied upon the representation as true and acted upon it to the party's damage.

*Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280. Dana Johnson induced Joyce Stobo to disregard the TOD form and transfer the account into the Estate by alleging the signature was forged and that he had this confirmed by a handwriting expert. If in fact the signature was Emerson Johnson's, this was a false representation of material fact that induced reliance that was justified and resulted in damage. There is no dispute that Dana took these actions. A juror could at least infer that the representation was made with reckless disregard of whether it was true or false.

11

Under Maine's version of the Uniform Transfer on Death Security Registration Act, a "beneficiary form" "means a registration of a security that indicates the present owner of the security and the intention of the owner regarding the person who becomes the owner of the security upon the death of the owner." 18-A M.R.S. § 6-302. "Registration in beneficiary form may be shown by the words 'transfer on death' or the abbreviation 'TOD' after the name of the registered owner and before the name of a beneficiary." 18-A M.R.S. § 6-306. TOD forms are not testamentary. 18-A M.R.S. § 6-310. TOD forms are contracts that pass ownership of the securities to the surviving beneficiaries upon the owner's death. 18-A M.R.S. § 6-307. The TOD form has no effect on ownership until the moment of death. 18-A M.R.S. § 6-308. "A registration of a security in beneficiary form may be canceled or changed at any time by the sole owner or all then surviving owners without the consent of the beneficiary." *Id.*

In this case, Emerson Johnson was the sole owner and therefore the only person authorized to register a valid TOD form to change the beneficiary.[10] The record is not clear, however, as to whether Emerson Johnson or Eleanor Phinney signed the TOD form. Emerson and Phinney were the only two persons present when the form was signed. Phinney emphatically testified that she could not remember whether she signed or

---

[10] H. Beck's summary judgment motion argues that the TOD form required an indorsement to be effective and thus 18-A M.R.S. § 6-308 does not govern. Securities are governed by Maine's version of Article 8 of the Uniform Commercial Code. 11 M.R.S. §§ 8-1101-1116. Under the statute, an "indorsement" is "a signature that alone or accompanied by other words is made on a security certificate in registered form or on a separate document for the purpose of assigning, transferring or redeeming the security or granting a power to assign, transfer or redeem it." 11 M.R.S. § 8-1102(k). An indorsement is effective if made by "an appropropriate person" 11 M.R.S. § 8-1107(2)(a), which for indorsements is defined as "the person specified by a security certificate or by an effective special indorsement to be entitled to the security." 11 M.R.S. § 8-1107(1)(a). Whether governed by 18-A M.R.S. § 6-308 or 11 M.R.S. § 8-1107(2)(a), the analysis and conclusion is the same. Emerson Johnson was the party who could sign, but neither provision expressly prohibits an account owner from receiving physical assistance in signing a TOD form. In any event, the factual record supports the inference that Emerson Johnson signed and a valid indorsement was made that obligated Stobo and H. Beck to process the form.

12

Emerson signed. (Eleanor Phinney Opp. S.M.F. ¶ 30.) The Defendants maintain that the signature on the TOD form is not Emerson's signature. William Johnson and Eleanor Phinney oppose this fact by noting that Emerson had trouble signing documents and his signatures varied depending on how he felt. (Eleanor Phinney S.M.F. ¶¶ 36, 38.) In her deposition, Phinney stated:

> Q: [I]f you did sign it, would it have been at Emerson's request?
> A: Yes, anything I signed, Emerson okayed it or asked me to, one or the other.

(Eleanor Phinney Dep. 73:24-25, 74:1-2.) One of the very reasons for meeting with Stobo that day was to sign the TOD form, which Emerson himself directed Stobo prepare, and Stobo in fact prepared in Emerson's presence. (Def. Joyce Stobo S.M.F. ¶ 26.) The circumstances surrounding the signing could support the inference that Emerson Johnson signed or Eleanor Phinney assisted Emerson in signing. This is sufficient to create a disputed issue of material fact as to the validity of the TOD form. *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 17, 917 A.2d 123 ("If material facts are disputed, the dispute must be resolved through fact-finding, even though the nonmoving party's likelihood of success is small."). Furthermore, contrary to the Defendants' arguments, the court cannot rule that the appearance of the signature, based on Joyce Stobo and Dana Johnson's personal knowledge of Emerson Johnson's signature, is sufficient to conclusively establish the signature is invalid. *Palmer v. Blanchard*, 113 Me. 380, 383-84, 94 A. 220, 222 (1915) (whether signature is genuine is a question of fact for the jury). The validity of the signature is a disputed issue of material fact that cannot be decided on summary judgment.

13

Even if Phinney did sign the TOD form at Emerson's request, it is not necessarily invalid at a matter of law. *See In re Cox' Will*, 139 Me. 261, 268-69, 29 A.2d 281, 285 (1942) (holding will signed by testator with the assistance of another was valid, provided the testator voluntarily intended to sign the will and was aware of the will's contents). Section 6-308 of the Act requires the sole owner to change a securities beneficiary form, but under the rule announced in *Cox' Will*, the form would still be valid if executed at Emerson's direction, provided he had knowledge of the contents. The circumstances above support the inference that Emerson had knowledge of the contents of the TOD form. Given that a valid will must comply with strict statutory formalities, *In re Paradis' Will*, 147 Me. 347, 366, 87 A.2d 512, 521 (1952), the law would not likely require more to validly execute a non-probate securities beneficiary contract. Although Phinney stood to gain from the transaction, this does not render the TOD form invalid. *See, e.g.*, 18-A M.R.S. § 2-505(b) ("A will is not invalid because the will is signed by an interested witness"). The comment notes that an interested witness also does not forfeit any bequest from the will. And as a practical matter, the prior TOD form in place granted $500,000 to Phinney. (Eleanor Phinney Opp. S.M.F. ¶ 22.) She was therefore entitled to a substantial sum from the securities account had Stobo and H. Beck enforced the previous TOD form rather than transferring the funds into the Estate. Ultimately, however, in light of the disputed facts, the court need not reach whether Phinney could legally sign the TOD form.

The Defendants' summary judgment motions largely depend on the conclusion the TOD form is invalid because Phinney signed the form. The summary judgment record is not so clear. Based on the undisputed facts, a fact finder could draw inferences for

14

three different scenarios: (1) Emerson Johnson signed the TOD form, (2) Emerson directed Phinney to sign for him, or (3) Eleanor Phinney signed on her own accord without Emerson's authorization. Under two of these possibilities, the form is potentially valid. With material facts disputed, summary judgment must be denied.

### 2. Claims Against Joyce Stobo, Salem Advisory Group and H. Beck

#### a. Tortious Interference With An Expectancy

While Dana Johnson's actions are sufficient to make out a prima facie case of fraud or undue influence to support the Plaintiff's tortious interference claim, the claim against Stobo is less clear. To prevail on their claims, Plaintiff William Johnson and Cross-claimant Party-in-interest Eleanor Phinney ("the Claimants") must establish that Stobo engaged in fraud, duress, or undue influence. *Morrill*, 1998 ME 133, ¶ 7, 712 A.2d 1039. Alternatively, the Claimants must establish Stobo interfered with a prospective economic advantage, which requires a showing "(1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104.

The complaint alleges Stobo "assisted, aided, and abetted" the other Defendants in tortiously interfering. The State of Maine has yet to recognize the tort of interference with an expectancy under an "aiding and abetting" theory. Whether Stobo properly processed the TOD form and whether she is liable for the tort of interference with an expectancy or prospective economic advantage are separate questions. By transferring the securities into the Estate of Emerson Johnson, Stobo was clearly a "but for" cause in denying the Claimants their expectancy or economic advantage. This conduct does not,

15

however, rise to fraud, intimidation, or undue influence. In opposition to summary judgment, the Claimants emphasize that Stobo's conduct, even if not fraud, undue influence, or intimidation, constitutes "other tortious means" sufficient to find her liable for tortious interference. (Eleanor Phinney Opp. Stobo Mot. Summ. J. 6.) Stobo's decision to transfer the account at Dana Johnson's request may have been negligent, or even reckless, but this conduct does not rise to the level of the intentional torts like fraud, duress, or undue influence necessary to support the claims. *See Morrill*, 679 A.2d at 521 ("One who by fraud, duress *or other tortious means intentionally prevents* another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.") (quoting Restatement (Second) of Torts) (emphasis added). The claims against H. Beck fail for the same reason. There is no allegation that H. Beck engaged in any intentional tortious behavior in processing the securities account.

### b. Breach of Contract

Phinney also alleges a claim for breach of contract against Stobo and H. Beck. Assuming the claimants are intended third party beneficiaries, the claim against Stobo fails for the simple reason Stobo was, in her individual capacity, not a party to the contracts governing the securities account. *Mueller v. Penobscot Valley Hosp.*, 538 A.2d 294, 299 (Me. 1988) (stating where defendant was not a party to a contract, he cannot be held liable for breach). Stobo was serving as a mere agent to her principal, H. Beck. *Cnty. Forest Products, Inc. v. Green Mountain Agency, Inc.*, 2000 ME 161, ¶ 42, 758 A.2d 59 ("When an agent is not a party to a contract between the principal and a third party, the agent is not liable to the third party for a breach of that contract.").

16

H. Beck, on the other hand, was a party to the contract and had certain obligations. Under the Uniform Transfer on Death Security Registration Act, "By accepting a request for registration of a security in beneficiary form, the registering entity agrees that the registration will be implemented on death of the deceased owner as provided in this Part." 18-A M.R.S. § 6-309(b). There is no dispute that H. Beck was subject to this statutory requirement. In this case, the securities registration was not implemented upon Emerson Johnson's death. H. Beck points to the following provision:

> (1) A securities intermediary shall comply with an entitlement order if the entitlement order is originated by the appropriate person, the securities intermediary has had reasonable opportunity to assure itself that the entitlement order is genuine and authorized and the securities intermediary has had reasonable opportunity to comply with the entitlement order. A securities intermediary satisfies the duty if:
> (a) The securities intermediary acts with respect to the duty as agreed upon by the entitlement holder and the securities intermediary; or
> (b) In the absence of agreement, the securities intermediary exercises due care in accordance with reasonable commercial standards to comply with the entitlement order.

11 M.R.S. § 8-1507 (1)(a)-(b). H. Beck argues that there was no obligation to honor the TOD form because the "appropriate person," Emerson Johnson, did not indorse the form.[11] In H. Beck's view, invalid signature rendered the form void. (H. Beck Mot. Summ. J. 9-16.) The problem with this argument is that it depends entirely on a factual finding that Eleanor Phinney signed the form. There are, however, disputed issues of fact, some of which support the inference that Emerson signed the form. Summary judgment is inappropriate on this ground alone.

H. Beck's argument also depends on the legal conclusion that Phinney's signature rendered the form invalid and H. Beck had no obligation to process it as a matter of law. Even if there was some question as to the form's validity, the course of action undertaken

---

[11] *See supra* note 10.

17

by Stobo was problematic for several reasons. First, while Dana Johnson held a valid power of attorney, that authority terminated at Emerson Johnson's death. 18-A M.R.S. § 5-910 ("A power of attorney terminates when . . . [t]he principal dies.") Dana was therefore not authorized to alter the TOD form in his power of attorney capacity when he met with Stobo after Emerson's death. Second, while a personal representative of the estate may alter a securities beneficiary form, the record is not clear as to whether Dana Johnson had been appointed personal representative at the time he met with Joyce Stobo to move the securities account into the Estate of Emerson Johnson. (Eleanor Phinney S.M.F. ¶ 39.) Even if Dana had been appointed personal representative at that time, there are certain statutory procedures that must be followed to assure an entitlement order is authorized and initiated by an appropriate person. These procedures were not followed. Instead, Stobo accepted Dana Johnson's assertion that the signature was invalid and complied with his request to make the transfer. The relevant statute requires a security intermediary like Stobo and H. Beck to exercise due care according to reasonable commercial standards. 11 M.R.S. § 8-1507(1)(b). Although Stobo's actions did not constitute an intentional tort, it remains far from clear whether Stobo's (and by extension H. Beck's) elected course of action met the standard of due care according to reasonable commercial standards. For these reasons, the court must deny summary judgment as to the breach of contract claim against H. Beck.

### III. Conclusion

The Defendants are entitled to summary judgment as to Plaintiff's claim to the chairs. Stobo and Salem Advisory Group are entitled to summary judgment on both the tortious interference and breach of contract claims. H. Beck is entitled to summary

18

judgment only on the tortious interference claim. Disputed issues of material fact as to the signing of the TOD form preclude summary judgment on the remaining claims regarding the securities account.

The only claims remaining for trial are the (1) tortious interference with an expectancy claims together with the unjust enrichment claims against Dana Johnson, Linda Ouellette, and the Estate, and the (2) breach of contract claim against H. Beck. All other claims are dismissed.

The clerk shall make the following entry on the docket:

Defendants Dana Johnson and Linda Oullette's motion for summary judgment is hereby GRANTED as to the Count IV of the Plaintiff's complaint regarding return of the chairs and DENIED as to claims and cross-claims related to the TOD form and securities account. Joyce Stobo's and H. Beck's motions to dismiss are DENIED. Motions for summary judgment by Defendants Joyce Stobo, Salem Advisory Group, LLC, and H. Beck, Inc. are all hereby GRANTED in part and DENIED as to the breach of contract claim against H. Beck.

SO ORDERED.

DATE: February _10_, 2015

John O'Neil, Jr.
Justice, Superior Court

19

CV-11-209

ATTORNEY FOR PLAINTIFF:
STEPHEN CANDERS (AND 3RD PARTY DEF)
MAINE LEGAL ASSOCIATES PA
11 MAIN STREET SUITE 1
KENNEBUNK, ME 04043

ATTORNEY FOR DEFENDANTS:
PETER CLIFFORD
CLIFFORD & CLIFFORD LLC
62 PORTLAND RD SUITE 37
KENNEBUNK, ME 04043

BRENDAN RIELLY
JENSEN BAIRD GARDNER HENRY
10 FREE STREET
PO BOX 4510
PORTLAND, ME 04112

WENDELL LARGE (ALSO 3RD PARTY DEF)
HEIDI HART
RICHARDSON WHITMAN LARGE & BADGER
465 CONGRESS STREET
PO BOX 9545
PORTLAND, ME 04112-9546

ATTORNEY FOR PII
ANDREW DUCHETTE
H. ILSE TEETERS TRUMPY
TAYLOR MCCORMACK & FRAME LLC
30 MILK STREET 5TH FLOOR
PORTLAND, ME 04101

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-11-209
JON - YOR - 3/15/2012

WILLIAM I. JOHNSON,

Plaintiff,

v.

DANA E. JOHNSON and
LINDA J. OUELLETTE,

Defendants,

ESTATE OF EMERSON JOHNSON,
ESTATE OF ETHEL J. IRVING, DANA
JOHNSON, and LINDA J. OUELLETTE

Counterclaim Plaintiffs,

v.

WILLIAM I. JOHNSON

Counterclaim Defendant,

and

JO ROSEN JOHNSON

Third-Party Defendant and
Counterclaim Defendant,

and

ELEANOR PHINNEY

Party-in-Interest,

## ORDER ON COUNTERCLAIM DEFENDANT'S MOTION FOR A
## MORE DEFINITE STATEMENT

Counterclaim Defendant, William I. Johnson, and Third-Party and

Counterclaim Defendant, Jo Rosen Johnson, move this court to order a more

definite statement of the allegations in the Counterclaim, pursuant to M.R. Civ.

1

P. 12(e). The motion has been fully briefed by the parties and oral argument was held on March 8, 2012.

## BACKGROUND

The Plaintiff, William Johnson, and the Defendants, Dana Johnson and Linda Ouellette, are siblings. Emerson Johnson and Ethel Irving, both deceased, are the parties' father and mother, respectively. This case was brought by William Johnson against his siblings, who are the personal representatives of their parents' respective estates, seeking remedies for alleged tortious interference with an expected inheritance, seeking constructive trust, and seeking the return of certain personal property. The Defendants brought a Third-Party Complaint against William Johnson's wife, Jo Rosen Johnson, and a Counterclaim against both William and Jo Johnson. This pleading consists of ten (10) counts and seventy-two (72) numbered paragraphs. The Counterclaim Defendants now move for a more definite statement. They have isolated twenty-seven (27) statements and argued that these paragraphs do not meet the notice pleading standards of M.R. Civ. P. 8(a), and in certain circumstances M.R. Civ. P. 9(b), (f), and (g).

## DISCUSSION

A motion for a more definite statement "is not a bill of particulars of pre-Rules practice designed to enable the defendant to be better prepared for trial." 2 Harvey, *Maine Civil Practice* § 12:16 at 431 (3d. ed. 2011). That is left to discovery proceedings. Instead, the motion is only available when the party required to make a responsive pleading cannot reasonably be required to frame his answer because of vagueness or ambiguity, rather than simple lack of detail. *Haghkerdar v. Husson College*, 226 F.R.D. 12, 14 (D. Me. 2005). The Law Court has stated that

2

a 12(e) motion is appropriate in a case in which a party felt there was "any doubt" as to what a party was seeking; that is, where there is doubt as to what issues must be met. *Nemon v. Summit Floors, Inc.*, 520 A.2d 1310, 1314 (Me. 1987).

On the other hand, the Maine Rules of Civil Procedure also require a plaintiff to plead certain allegations "with particularity." *See* M.R. Civ. P. 9. When pleading fraud or mistake, the fraud and the circumstances surrounding the fraud must be stated with particularity such that the defendant is aware of the actions or circumstances that must be explained or denied but it should not be overburdened with detail. Harvey § 9.2 at 383. Not all failures to plead within Rule 9(b) are so vague as to warrant an order for a more definite statement under 12(e).

The Counterclaim, in general, is not so defective as to warrant the granting of the motion for a more definite statement. The Counterclaim Plaintiffs have alleged specific actions taken by William and Jo Johnson, including but not limited to, unauthorized acquisition of property described in the attached exhibits (Counterclaim ¶ 7), misrepresentation of the value of assets transferred for safe-keeping (Counterclaim ¶ 12), acquisition of real property by forgery or undue influence (Counterclaim ¶ 14), and breach of fiduciary duty under a power of attorney (Counterclaim ¶ 27). Although some of the fraud allegations do not meet the Rule 9 requirements, they are not so vague as to require a more definite statement. The court finds that the specific details of these numerous allegations and counts can be better established through discovery. Given the number of counts and the apparently extensive factual record to be developed, the court is willing to allow a more liberal discovery process than allowed under the Maine Rules of Civil Procedure.

3

However, the claim stated in Count 10, "Third-Party Claim" against Jo Johnson is so vague and ambiguous that is does not meet the "intelligible" standard of M.R. Civ. P. 12(e). Earlier paragraphs allege that "Jo Johnson is jointly and severally liable for any judgment that Dana Johnson or Linda Ouellette may owe to William Johnson." (Counterclaim¶ 4.) Again, under Count 10, the Counterclaim Plaintiffs state that they are "entitled to recover all or part of what William Johnson may recover from them, from Jo Johnson." (Counterclaim ¶ 72.) Nowhere in this extensive pleading do the Counterclaim Plaintiffs assert a basis on which Jo Johnson may be held to be jointly and severally liable for any amounts ultimately adjudged owed to William Johnson. This does not meet the standard of notice pleading because there is no way for the Third-Party Defendant to know what is being asserted against her and she cannot be expected to make a reasonable response to such a vague allegation.

The Third-Party Defendant's motion is GRANTED only with respect to Count 10. The Counterclaim Plaintiffs are ORDERED to serve a more definite statement of the basis for its third-party claim against Third-Party Defendant, Jo Johnson within 10 days of receipt of this order.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: 3/15/12

John O'Neil, Jr.
Justice, Superior Court

4

ATTORNEY FOR PLAINTIFF:
STEPHEN CANDERS
MAINE LEGAL ASSOCIATES PA
11 MAIN STREET SUITE 1
KENNEBUNK ME   04043


ATTORNEY FOR DEFENDANTS:
PETER CLIFFORD
HODSON & CLIFFORD, LLC
56 PORTLAND ROAD
KENNEBUNK ME   04043


ATTORNEY FOR THE PARTY-IN-INTEREST:
ANDRE G DUCHETTE
TAYLOR MCCORMACK & FRAME LLC
PORTLAND ME   04101