**ESTATE OF Lawrence B. UTTERBACK**

Supreme Judicial Court of Maine.

Argued Nov. 20, 1986.
Decided March 3, 1987.

---

Isaacson, Hark & Epstein, Philip M. Isaacson (orally), Elliott Epstein, Lewiston, Jonathan R. Luce, Farmington, for appellants.

Verrill & Dana, Timothy Keiter (orally), John Philbrick, Portland, Joseph Holman, Farmington, for appellee.

Before NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

ROBERTS, Justice.

The residuary beneficiaries of a testamentary trust established by the testator, Lawrence B. Utterback, for the support of his widow, Florence Utterback, appeal from a Franklin County Probate Court judgment interpreting the testator's will.[1] The residuary beneficiaries contend that the Probate Court erred when it excluded evidence of the testator's oral statements of intent with respect to disposition of trust income and erred when it interpreted the

---

1. The residuary beneficiaries are the three daughters of the testator by a prior marriage, Sonya Cirks, Judith Murray, and Margaret Day.

will to require the trustee to pay from trust income a fixed percentage of Florence Utterback's annual expenses without regard to her own income or assets. Florence Utterback cross-appeals from that portion of the Probate Court's judgment declining to remove Irvin Cirks, the testator's son-in-law, as trustee of the testamentary trust. We affirm the judgment in all respects.

## I.

Lawrence and Florence Utterback were married in 1973. Because each had children from their prior marriages, they had an antenuptial agreement to preserve their separate estates. During their marriage the Utterbacks developed a system for pooling their resources and paying their living expenses. Lawrence Utterback died on May 22, 1982 leaving an estate in excess of $100,000.

Shortly thereafter, a dispute arose between Florence Utterback and the trustee over the administration of a testamentary trust created by Utterback's will. Specifically, the trustee contended that the express terms of the trust gave him sole discretion over how much of the trust income should be paid to Florence Utterback and that he was required to take into account her own individual assets and income in order to properly distribute trust income. Florence Utterback claimed the testator intended to provide her, as sole life beneficiary, with all of the trust income, without regard to her separate assets or income. The section of the will in dispute reads

I give, bequeath, devise and appoint all the rest, residue and remainder of my estate in trust for the following use and purposes: I direct that my Trustee, hereinafter named, pay *so much of* the income thereon to my wife, the said FLORENCE UTTERBACK, for her maintenance and general welfare, for so long as she shall live and upon her decease, I give and bequeath all the remainder of my estate to my children....

(emphasis added) The dispute centers around the meaning of the phrase "so much of."

Florence Utterback filed a Petition for Construction of the Will and a Petition for Removal of the Trustee in the Franklin County Probate Court. These separate petitions were consolidated for trial. The residuary beneficiaries sought to introduce evidence of the oral declarations of the testator made before and after the execution of his will in order to establish his intent with respect to the disposition of trust income. The court, following established precedent, excluded the evidence. The court did, however, admit other extrinsic evidence to assist it in resolving an ambiguity in the trust language.

In its final decision the court found that the trust language was ambiguous and that the ambiguity could not be resolved by examining the structure and other parts of the will. The court therefore considered extrinsic evidence of the testator's intent, including the various relationships between the testator and his intended beneficiaries, but excluding testimony of oral statements made by the testator with respect to his intent. Based on this examination of the surrounding circumstances, the court concluded that the testator intended that Florence Utterback be supported in a manner that would allow her to live at a level comparable to what she had enjoyed during their marriage.

From this basic finding, the court proceeded to determine the proper level and manner of payment of trust income to Florence Utterback. The court calculated the percentage which the testator contributed out of his own assets and income during his life to their joint expenditures and to those expenditures which were solely his but for the benefit and enjoyment of both. The court determined that the testator contributed 81.5% and Florence Utterback contributed 18.5%. According to the court, because the testator intended to maintain Florence Utterback at a lifestyle comparable to that to which she had become accustomed during their marriage, the trustee was required to pay to Florence Utterback 81.5% of her annual expenses, calculated from defined categories of anticipated expenditures. As was true while they were married, Florence Utterback would contrib-

ute 18.5% of her annual expenses out of her own assets and income. Furthermore, the court determined that the trustee need not inquire into the separate income or assets of Florence Utterback in order to determine the proper distribution of income from the trust.

Finally, the court declined to remove Irvin Cirks as trustee. While recognizing the friction generated by the litigation between the parties, the court, after reviewing the testimony, and noting that the testator must have known or recognized the potential for conflict when he appointed his son-in-law trustee, concluded that removal was not necessary to ensure that Florence Utterback's rights would be protected. The parties appeal and cross-appeal from the Probate Court judgment.

## II.

The residuary beneficiaries argue first that the court erred when it excluded testimony of the testator's oral statements with respect to his testamentary intent. They argue that these statements should have been admitted to clarify the ambiguity in the language creating the trust. The substance of the excluded testimony may be broken down into two general categories. The first category is of statements allegedly made by the testator concerning Florence Utterback's son, Curtis Moody. Any increase in Florence Utterback's estate from trust income, if accumulated, might ultimately benefit Curtis Moody. The proffered testimony concerning Curtis Moody tends to establish that the testator did not want any of his money to benefit Curtis Moody, directly or indirectly. Requiring the trustee to take into account Florence Utterback's own separate assets and income before distributing trust income, the residuary beneficiaries argue, would further the testator's underlying intent not to benefit Curtis Moody.

The second category of testimony comes from the testator's attorney and scrivener of the will. He testified that the trust language as it now reads omits a key phrase to accord with the testator's instruc-

tions. The attorney testified that the trust language should have read

I direct my trustee, hereinafter named, to pay so much of the income thereon to my wife, said Florence Utterback, for her maintenance and general welfare *as my trustee in his sole discretion shall deem necessary having in mind said Florence Utterback's separate income.*

(emphasis added). The residuary beneficiaries argue that evidence of the testator's instructions should have been admitted.

The residuary beneficiaries acknowledge that Maine case law prohibits the introduction of testimony relative to the testator's oral declarations of intent. *See First Portland National Bank v. Kaler-Vaill Memorial Home,* 155 Me. 50, 63–64, 151 A.2d 708, 715–16 (1959). They urge us to abandon our present rule because it allegedly excludes from evidence the best available testimony for determining the testator's intent. We disagree with the residuary beneficiaries and decline to abandon the rule.

 We agree that resort to extrinsic evidence is appropriate in this instance to resolve the ambiguity in Utterback's will. We distinguish, however, his oral declarations of intent from those objective circumstances that may properly be considered by the trial court. *See Ziehl v. Maine National Bank,* 383 A.2d 1364, 1369–73 (Me.1978); *Iozapavichus v. Fournier,* 308 A.2d 573, 575 (Me.1973). The Probate Court considered extrinsic evidence in determining the testator's intent, including the events leading up to the execution of his will in 1980, and surrounding its execution. The court also admitted testimony with respect to the testator's and Florence Utterback's financial arrangements prior to his death. In addition, evidence was admitted concerning the testator's relationships with other family members. All of this evidence is properly admissible because of its inherently objective quality. As we noted in *Maine National Bank:*

The only theoretically sound approach is to keep the door open to permit consideration of the *total import of all* objective extraneous circumstances, general or particular, which can assist in clarifying

the meaning the testator sought to express by words which lack a plain meaning in general community usage as applied to the context of reality involved. 383 A.2d at 1372 (emphasis in original) (footnote omitted).

 Testimony concerning statements of intent made by a testator at or near the time he made his will is almost always self-serving and rarely objective. The residuary beneficiaries note that several states have relaxed the rule excluding oral statements of the testator's intent, particularly when the statements are made to the scrivener. *See, e.g., Wilson v. Flowers*, 58 N.J. 250, 260–264, 277 A.2d 199, 205–207 (1971). The testimony of scriveners, however, concerning the oral declarations of the testator may be just as questionable as the testimony of non-attorneys. Nor are these sorts of statements merely hearsay, and thus possibly within the ambit of an exception to the hearsay rule.[2] Rather, admission of testimony concerning the oral declarations of the testator's intent would subvert the very purpose of the Statute of Wills: to provide a reliable source of the testator's intent expressed under circumstances where the testator fully understands the significance and permanence of the statements he has reduced to written form. Thus, the extrinsic evidence of the testator's oral declarations of intent sought to be admitted by the residuary beneficiaries, including the testimony of the scrivener, was properly excluded.

 The residuary beneficiaries also argue, citing *Iozapavichus v. Fournier*, 308 A.2d 573, 575 (Me.1973), that the testimony sought to be introduced concerning Curtis Moody is different from the other extrinsic evidence admitted by the court because it is evidence concerning the relationship of the testator to a potential beneficiary. In *Iozapavichus*, however, we did not consider actual statements made by the testator concerning his intended disposition. Rather, we considered a variety of extraneous circumstances, including familial relationships, to determine the scope of a class gift. We therefore reject the contention that the testimony concerning Curtis Moody should have been admitted as extrinsic evidence. That evidence is no different in kind than the testimony concerning other oral statements of intent made by the testator.

## III.

The residuary beneficiaries attack three general findings of fact made by the court with respect to the testator's intent. Findings of fact made by the Probate Court will not be disturbed unless clearly erroneous. *Estate of Cushman*, 501 A.2d 811, 813 (Me.1985).

 The first challenge relates to the court's finding that the testator intended that the amount of trust income paid to Florence Utterback be unconnected to her own independent financial resources. The residuary beneficiaries argue that no evidence was introduced to suggest that the testator intended to provide Florence Utterback with anything other than a "safety net" should her own resources prove to be insufficient to support her after the testator's death. They also contend that by failing to consider her own independent resources, trust income *could be* used merely to enhance the size of her estate without actually contributing to her support and maintenance, thereby violating the express terms of the will.

The court relied on several factors, all supported in the record, to conclude that the testator intended to provide Florence Utterback trust income without reference to her own resources. During their marriage, the Utterbacks had a well-defined system for managing their joint funds. Each contributed $125 per month to a "kitty" towards joint expenses. Whatever expenses were not covered by this "kitty" were paid for by contributions from the testator. Florence Utterback kept for her

---

**2.** The residuary beneficiaries argue that M.R. Evid. 803(3) may be read to allow admission of these types of statements. While the rule *may be* read in such a manner, we decline to do so.

We agree with Field & Murray, *Maine Evidence* § 803.3, at 214 (1976), that existing case law excluding such statements is not affected by the rule.

estate her own income in excess of $125 per month and the testator kept for his own estate the funds in excess of those necessary to meet their joint annual expenses. The Utterbacks' financial arrangements while married, therefore, support the court's determination that Florence Utterback's resources should not be considered in determining the amount of trust income she is to receive because the testator intended to maintain his wife at a comparable lifestyle.

▪ The second finding attacked by the residuary beneficiaries relates to the level of support the court required the trustee to furnish to Florence Utterback out of trust income. The court, after computing the couple's expenses at the time of the testator's death, determined that the testator contributed 81.5% toward payment of the expenses the Utterbacks incurred as a married couple. Since the court also found that the testator intended to allow Florence Utterback to maintain a comparable lifestyle, the court required the trustee to pay out of trust income 81.5% of Florence Utterback's annual expenses as determined from approved categories of expenses. The residuary beneficiaries argue that because there is nothing in the will to suggest this figure, the court rewrote the will instead of interpreting it.

The court's quantification of the amount due Florence Utterback from trust income, while perhaps not exactly what the testator had in mind, is not clearly erroneous. There is no factual dispute that the testator contributed approximately 81.5% towards their joint annual expenses while married. In order to maintain Florence Utterback at a lifestyle to which she had become accustomed, a continuation of this percentage level of support from trust income is not inconsistent with the trust-creating language in the will. Perhaps rounding off the percentage at 80% might have avoided a misleading impression of mathematical certainty. Nevertheless, we find no clear error.

▪ Finally, the residuary beneficiaries contend that it was clearly erroneous for the Probate Court to 1) attribute to the testator an intent to provide Florence Utterback up to $1000 annually toward a trip each year and 2) to attribute to the testator an intent to subsidize Florence Utterback's expenses for the car left to her by the testator in his will. Upon reviewing the record, we conclude that the Probate Court properly included these categories of expenses to be paid partially from trust income.

## IV.

Florence Utterback cross-appeals from the court's refusal to remove Irvin Cirks as trustee of the trust established by the testator for her benefit during her lifetime. Irvin Cirks was the testator's son-in-law and is husband to one of the three residuary beneficiaries, Sonya Cirks. The decision of the Probate Court with respect to removal will not be disturbed when it is within the sound exercise of discretion. *See Estate of Peter C.,* 488 A.2d 468, 471–72 (Me.1985); G. Bogert, *The Law of Trusts and Trustees* § 527, at 52–53 (1978). Moreover, courts are generally more reluctant to remove a trustee chosen by the settlor than one appointed by a court. *Id.* at 53–54.

Florence Utterback points to several problems with the administration of the trust that, when compounded, require removal of the trustee. The thrust of her argument concerns the general hostility and disagreement between the parties generated by the dispute over the will and the obvious conflict of interest for the trustee between his wife, a residuary beneficiary, and the life beneficiary, Florence Utterback. Although she did not seek an order for the return of funds, Florence Utterback also contends that the court failed to adequately consider a transfer by the trustee of trust income to the residuary beneficiaries.

The Maine Probate Code does not set forth specific substantive standards to guide trustees in the performance of their fiduciary duties. Title 18–A M.R.S.A. § 7–301 (1981) states a general duty incumbent on a trustee "to administer a trust expeditiously for the benefit of the benefi-

ciaries...." Section 7–302(a) requires a trustee to "observe the standards in dealing with the trust, (sic) assets that would be observed by a prudent person dealing with the property of another...." In the absence of specific statutory factors, common law principles should guide the determination of whether the trustee should or should not be removed. *See* 18-A M.R.S.A. § 1–103 (1981); *Estate of Peter C.*, 488 A.2d at 470.

The Probate Court found that the trustee was chosen by the testator because of their close and trusting relationship towards one another and that the testator must have been aware of the potential for conflict when he named Irvin Cirks trustee. The court also found that the trustee had achieved a solid trust growth rate in both income and principal of about 14.5%. Furthermore, Florence Utterback's attorney conceded at the close of the trial that Cirks had done nothing dishonest or intentionally wrong. The trustee always sought the advice of counsel prior to taking any action affecting Florence Utterback. The transfer of funds to the residuary beneficiaries was never hidden by the trustee, and appeared as an item in his annual accounting. Although a potential conflict of interest exists with respect to his wife's position as residuary beneficiary, this conflict has not affected the growth of trust income or trust principal. Hostility or disagreeable personal relations between the trustee and beneficiary are generally not alone sufficient to warrant removal of a trustee. Bogert, *supra*, at 86–88.

The other factors cited by Florence Utterback in support of removal, whether taken alone or in combination, were adequately considered by the court. We conclude that the Probate Court did not err in holding that those factors do not warrant removal.

The entry is:

Judgment affirmed.

All concurring.