1998 ME 133

**Gardner W. MORRILL**

v.

**George R. MORRILL, et al.**

Supreme Judicial Court of Maine.

June 3, 1998.

Thomas F. Hallett (orally), Portland, for plaintiff.

Jeffrey T. Edwards (orally), Preti, Flaherty, Beliveau & Pachios, L.L.C., Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

DANA, Justice.

[¶ 1] George R. Morrill appeals from a judgment entered in the Superior Court (Cumberland County, *Mills, J.*) after a jury verdict finding he tortiously interfered with his brother Gardner's expectancy of an inheritance in their parents' residential property. George contends that the court committed errors in excluding certain evidence and in its instructions to the jury. We agree and vacate the judgment.

[¶ 2] Ruth and Gardner R. Morrill had three children, Gardner W., Roger, and George. Between 1981 and 1989, the parents made certain real estate and stock transfers to their son George, including several family businesses and the residual interest in their residence in Harrison. Gardner R. Morrill died in 1990, survived by his wife and children. In 1993 Gardner W. sued George,[1] alleging that George had tortiously interfered with Gardner W.'s legacy by inducing his parents to make these transfers. At the trial, George moved for a judgment as a matter of law. The trial court reasoned that to maintain a claim of tortious interference with an expected legacy, Gardner W. had the burden to prove his parents were intestate at the time of the tortious conduct, and the court granted the motion because no such evidence was presented during the trial. We vacated that judgment and held that "[s]imply by proving that he is their child and therefore a natural recipient of his parents' bounty, Gardner [W.] ha[d] established an expectancy of inheriting a portion of his parents' estate." *Morrill v. Morrill*, 679 A.2d 519, 521 (Me.1996) (*Morrill I*).

[¶ 3] During the second trial George attempted to have attorney Neil Dow testify regarding statements made by the parents at the time Dow consulted with them regarding the transfer of their residence. The statements were excluded from evidence. George's offer of proof was that when Dow went to the elder Morrills' house to discuss the transfer of the residence, Gardner R. asked Dow to informally review his will, which had been drafted by another attorney. Dow would have testified that while conversing about the will, Gardner R. told him that Gardner W. was a "loser" and that Ruth told him that Gardner W. was "financially irresponsible." The court conceded that the statements were relevant but excluded them on the authority of *Estate of Utterback*, 521 A.2d 1184 (Me.1987), which held that testimony concerning statements of intent made by a testator at or near the time a will was made are inadmissible for purposes of clarifying testamentary language because they "would subvert the very purpose of the Statute of Wills: to provide a reliable source of the testator's intent expressed under circumstances where the testator fully understands the significance and permanence of the statements he has reduced to written form." *Id.* at 1188. The jury found that George had tortiously interfered with Gardner W.'s ex-

---

1. The family businesses, Morrill's Auctions, Inc. and Maine Auto Dealers Exchange, Inc., were also named as defendants.

pectancy with regard to the family residence and awarded damages of $40,000. This appeal followed.

[¶ 4] George argues that the court misapplied *Utterback*, contending that the mere fact that Dow's conversation with his parents occurred while reviewing Garner R.'s will does not bring it within the scope of the holding in *Utterback*. We agree. Our decision in *Utterback*, which reflected a policy of excluding statements of a testator's intent that would otherwise be admissible pursuant to M.R. Evid. 803(3), the state of mind hearsay exception, applies in cases where a party seeks to introduce the hearsay statement of a testator to prove testamentary intent. In this case, the parents' statements that Gardner W. was a "loser" and "financially irresponsible" were not hearsay. The statements were not offered to prove the truth of the matter asserted, namely, whether Gardner W. was in fact a loser or financially irresponsible; they were offered instead to prove Gardner R.'s view of Gardner W. It was therefore error to exclude the offered testimony.

[¶ 5] Moreover, the exclusion of Dow's testimony was not harmless error.

> An exclusion of evidence, even if wrongful, will not suffice to cause a reversal unless the party against whom the ruling is made is aggrieved or prejudiced by it. Prejudicial injury occurs only if the evidence excluded was relevant and material to a crucial issue and if it can with reason be said that such evidence, if admitted, would probably have affected the result or had a controlling influence on a material aspect of the case.

*Towle v. Aube*, 310 A.2d 259, 264 (Me.1973). A crucial issue in this case was whether George unduly influenced his parents into transferring their property to him. A presumption of undue influence arises when the superior party in a confidential relationship obtains a benefit from a transaction between the parties. *DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me.1995) (citing *Ruebsamen v. Maddocks*, 340 A.2d 31, 36 (Me.1975)). Because Gardner W. introduced evidence tending to establish the existence of a confidential relationship between George and his parents,

George, in order to rebut the presumption of undue influence, was required to demonstrate the entire fairness of the transaction. *See Estate of Campbell*, 1997 ME 212, ¶ 8, 704 A.2d 329, 331. Evidence of Gardner R. and Ruth's estimation of Gardner W., especially in comparison to George, was directly relevant to proving that the conveyance of the residence was fair and untainted by George's influence. The law does not prohibit a party in a confidential relationship from transferring property to the superior party in the relationship, even by gift. Rather, the law seeks to ensure that transfers within these types of relationships are the true intent of the grantor and not the product of fraud or undue influence on the part of the grantee. For this reason, George should have been permitted to introduce the parents' statements in evidence to demonstrate their lack of regard for Gardner W.'s character and to explain why they legitimately would want to transfer the property to George. We cannot say that the exclusion of such testimony was harmless.

[¶ 6] We also find error in the court's instruction regarding whether a child has an expectation of inheriting a portion of his parents' estate. Citing our holding in *Morrill I*, the court instructed the jury that "[a] child has an expectancy of inheriting a portion of his parents' estate." Although we held in *Morrill I* that the existence of a parent-child relationship enabled a claim of tortious interference with an expected legacy to survive a motion for a judgment as a matter of law, our holding should not be read to establish the party's burden of proof on the nature and extent of that legacy.

[¶ 7] We have adopted the Restatement formulation of the tort:

> One who by fraud, duress or other tortious means *intentionally prevents another from receiving* from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

RESTATEMENT (SECOND) OF TORTS § 774B (1979); *see Plimpton v. Gerrard*, 668 A.2d 882, 885 n. 2 (Me.1995). The elements of the tort are (1) the existence of an expectancy of inheritance; (2) an intentional interference

by a defendant through tortious conduct, such as fraud, duress, or undue influence; (3) a reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference; and (4) damage resulting from that interference.[2]

[¶ 8] Pursuant to *Morrill I,* a factfinder may infer, from the mere fact that the plaintiff is the child of his parents, that he had an expectancy of inheriting something from his parents. In order to demonstrate to a reasonable certainty that the inheritance would have been received but for the actions of the tortfeasor, the plaintiff must present evidence on the source, nature and extent of the expected inheritance. That evidence may include the intestacy of the parents, the existence and content of any previous or existing will, and the previous transfers of property out of the parents' ownership or control during their lifetimes. The amount or value of the property to have been received must be proven to a reasonable degree of certainty but need not be proven with exactitude.[3]

[¶ 9] Accordingly, the plaintiff has the burden of proving both the existence *and the extent*[4] of the expectancy. If the plaintiff fails to offer evidence of the existence and extent of the expectancy, the mere fact of that parental relationship would be insufficient to establish a prima facie case of tortious interference with an expected inheritance.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

SAUFLEY, Justice, concurring.

[¶ 10] I concur with the Court's conclusion that *Utterback's* holding must be restricted to evidentiary issues directly involving will contests. I also concur with the Court's conclusion that Gardner must prove the extent of his expectancy because, in order to make out a claim for tortious interference with inheritance, the plaintiff must demonstrate that the tortious action of the wrongdoer caused the plaintiff's damages.[5] I write separately, however, to address the confusion that I believe was created by the language of *Morrill I.*

[¶ 11] In *Morrill I,* Gardner appealed from the trial court's decision granting George's motion for judgment as a matter of law at the conclusion of Gardner's case. At trial, Gardner presented no more than the bald fact of his biological relationship to his parents on the issue of his expectancy. On appeal, Gardner did not provide a transcript of the trial proceedings. Nonetheless, we concluded that a trial transcript was not necessary for the review of the narrow question presented, and held that:

> [s]imply by proving that he is their child and therefore a natural recipient of his parents' bounty, Gardner has *established* an expectancy of inheriting a portion of his parents' estate. Because he is their child, the existence *vel non* of a will is irrelevant to the issue whether an expectancy has been created.

679 A.2d at 521 (emphasis added). Because the only evidence presented by Gardner on the existence, nature or extent of his expectancy was his relationship to his parents and because we concluded that evidence limited

---

2. *See Firestone v. Galbreath,* 67 Ohio St.3d 87, 616 N.E.2d 202, 203 (1993) (establishing elements of tort of intentional interference with expectancy of inheritance).

3. *See* RESTATEMENT (SECOND) OF TORTS § 912 cmt. d (1979) ("If there is an interference with intangible rights ... there may be great difficulty in proving the existence or amount of loss with any degree of certainty. It is necessary to show at least that the right is valuable.").

4. We note that Attorney Dow's testimony regarding the elder Morrills' attitudes towards Gardner, in addition to establishing the overall fairness of

the property transfers, is relevant to the issue of the extent of Gardner W.'s expected legacy.

5. *See* RESTATEMENT (SECOND) OF TORTS § 774B cmt. d (1979) ("An important limitation upon the rule stated in this Section is that there can be recovery only for an inheritance or gift that the [plaintiff] would have received but for the tortious interference of the actor. This means that, as in other cases involving recovery for loss of expectancies ..., there must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator....").

to that fact was sufficient to allow Gardner to get to the jury, *Morrill I* held that proof by a plaintiff that he was a child of his parents was sufficient to meet his burden on all issues related to the expectancy. Accordingly, on remand, the trial court instructed the jury that "a child has an expectancy of inheriting a portion of his parents' estate."

[¶ 12] Recognizing the evidentiary gap created by the language of *Morrill I,* the Court today concludes that the trial court should have understood our opinion in *Morrill I* to mean that a child has an expectancy in his parents' estate only *to the extent proven.* We did not, however, place any such burden of proof on Gardner in *Morrill I,* but simply noted that "[e]vidence concerning testacy ... *may be relevant* to enhance or diminish the expectancy and to determine damages." *Morrill I,* 679 A.2d at 521 (emphasis added). As the Court has now correctly held, the plaintiff does have the burden of proving both the existence *and the extent* of the expectancy. If the plaintiff fails to offer evidence of the existence and extent of the expectancy, the plaintiff's claim cannot survive a motion for judgment as a matter of law. To the extent that *Morrill I* held otherwise, I would overrule its holding.