MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 94
Docket:       Yor-15-351
Argued:       April 7, 2016
Decided:      June 28, 2016

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and
              HUMPHREY, JJ.

ROBERT M. COTE

v.

DONALD R. COTE et al.

MEAD, J.

[¶1]  Robert M. Cote appeals from a summary judgment entered by the Superior Court (York County, *O'Neil, J.*) in favor of Donald R. Cote, Priscille J. Cote, and Angela Cote, on Robert's complaint alleging tortious interference with an expectancy of an inheritance.  On appeal, Robert contends that the court erred in concluding that he failed to adduce prima facie evidence of causation.  We affirm the judgment.

I.  BACKGROUND

[¶2]  Viewed in the light most favorable to Robert, the nonmoving party, the summary judgment record contains the following evidence.  *See Angell v. Hallee*, 2014 ME 72, ¶ 16, 92 A.3d 1154.  Fernand and Pauline Cote had nine children, including the appellant, Robert, and two of the three appellees, Donald and

2

Priscille.[1]  Rene L. Cote, Paul J. Cote, Madeline T. LaPlante, and Jean L. Cote are all also children of Fernand and Pauline, but are not parties to this appeal.[2]

[¶3]  Fernand died in 1991, leaving all his assets to Pauline.  Pauline died on September 3, 2010.  The instant case involves a dispute primarily among siblings regarding the substance of and rights to Pauline's estate.

[¶4]  From 1995 until her death, Pauline made a number of substantial changes relating to the ownership and management of her assets.  In 1995, Pauline conveyed her home to Donald and Priscille as joint tenants, reserving a life estate for herself, with the verbal instruction that after her death the sale proceeds from the house should be split equally among the children.  None of the other siblings opposed this conveyance or sought to impose a constructive trust.  Pauline also granted Donald and Priscille financial power of attorney in the same year.

[¶5]  In 2001, Pauline executed a will and testament that bequeathed her entire estate to her living children in equal shares, and named Donald and Priscille as personal representatives of the estate.  Each of the key aspects of her estate planning—those being (1) the conveyance of the home, (2) the designation of agents under financial powers of attorney, and (3) the execution of the will—was

---

[1]  The remaining appellee is Donald's wife, Angela.

[2]  Although most of Robert's siblings, including Rene, Paul, and Madeline, were parties to the action in the trial court, Robert is the sole appellant because he was the only person designated on the notice of appeal.

undertaken with the assistance of Attorney Mary Toole, whom Priscille had chosen for Pauline and knew from prior dealings. In 2001, Pauline also changed the payable-on-death beneficiaries of certain annuities and insurance policies from Madeline and Jean to Donald and Priscille.

[¶6] In 2006, Priscille, aided by Donald and Angela, took over the management of Pauline's finances after Pauline fell victim to a scam that resulted in a loss of approximately $20,000. Pauline suffered a stroke in 2008. Shortly thereafter Priscille moved in with her and hired a caretaker to assist in taking care of her needs.

[¶7] According to facts asserted in affidavits submitted by Robert, which we view in the light most favorable to Robert for purposes of our analysis, Donald and Priscille isolated Pauline after she had the stroke in 2008, and interfered with the other children's efforts to spend time with Pauline. Pauline, at some point, told Paul that she wanted to remove Priscille from her designation as an agent with power of attorney and that she also wanted to remove Donald as executor of her will. At a family gathering, Paul suggested that Pauline use a different attorney for her future needs, and Priscille responded, "[Y]ou won't get [that change] without a fight from me," and that Paul would "never get a penny" from Pauline's estate. Similarly, Donald told Paul, "[I]f you don't like [what is going on with Pauline's

4

estate then] you can take me to court, but, in the meantime, I will enjoy spending your money." Ultimately, Pauline never executed the changes that were discussed.

[¶8]  When Pauline died in 2010, her assets principally comprised (1) two bank accounts containing a total of approximately $14,000, all of which was spent to pay estate expenses; (2) savings bonds in the amount of about $28,000, which passed automatically to each bond's designated recipient; and (3) certain nonprobate devices, such as a life insurance contract and two annuity contracts collectively worth around $116,000, for which Donald and Priscille were named as payable-on-death beneficiaries.  In addition, there existed real property valued at $164,000, that was wholly owned by Donald and Priscille as joint tenants upon the termination of Pauline's life estate.  Although Pauline's will effective at the time of her death devised her estate in equal shares to her children, most of the children essentially received no distribution because the estate's expenses exceeded its assets.  In contrast, Donald and Priscille received funds through their designations as payable-on-death beneficiaries and received the real property as a result of the 1995 deed.

[¶9]  In 2013, Robert commenced an action against Donald, Priscille, and Angela for tortious interference with an expectancy of an inheritance.[3]  In his

---

[3]  Robert asserted other theories of liability in the initial complaint, but later amended it to assert only a claim of tortious interference with an expectancy of an inheritance.

claim, Robert contended that Pauline had additional assets that were unaccounted for, including a number of certificates of deposit, money market accounts, and other investments and accounts. Robert alleged that Donald, Priscille, and Angela manipulated and controlled Pauline in the later years of her life, resulting in an unequal inheritance among the children.

[¶10] On October 1, 2014, Donald and Angela jointly filed, and Priscille individually filed, motions for summary judgment. On April 23, 2015, the Superior Court (York County, *O'Neil, J.*) entered an order granting both Priscille's and Donald and Angela's motions, reasoning that Robert did not make a prima facie case for the causation element of tortious interference with an expectancy of inheritance. The court noted that, although Robert's oppositions to the statements of material fact were supported by affidavits, many of the assertions in those affidavits were not based on personal knowledge or were based on inadmissible evidence. This appeal followed.

## II. DISCUSSION

[¶11] "We review the grant of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the summary judgment has been granted in order to determine if there is a genuine issue of material fact." *Brady v. Cumberland Cty.*, 2015 ME 143, ¶ 10, 126 A.3d 1145 (quotation marks omitted). "A fact is material if it has the potential

6

to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth . . . ." *Angell*, 2014 ME 72, ¶ 17, 92 A.3d 1154 (quotation marks omitted).

[¶12]   To survive Donald, Priscille, and Angela's motions for summary judgment, Robert was required to establish a prima facie case for each of the following elements of tortious interference with an expectancy of an inheritance:

> (1) the existence of an expectancy of inheritance; (2) an intentional interference by a defendant through tortious conduct, such as fraud, duress, or undue influence; (3) a reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference; and (4) damage resulting from that interference.

*Morrill v. Morrill*, 1998 ME 133, ¶ 7, 712 A.2d 1039; *see also Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 12, 48 A.3d 774 ("To survive a defendant's motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action." (quotation marks omitted)).

[¶13]  The parties do not dispute that an expectancy of an inheritance existed here because Robert was named in his mother's will.  The second and third elements are each addressed in turn.

A.    Intentional Interference through Undue Influence

[¶14]   An intentional interference can be shown through the exercise of undue influence.   *See Morrill*, 1998 ME 133, ¶ 7, 712 A.2d 1039.   "Undue influence is defined as unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation[ship] between them is justified in assuming that that person will not act in a manner inconsistent with his welfare."   *Theriault v. Burnham*, 2010 ME 82, ¶ 6, 2 A.3d 324 (alteration in original) (quotation marks omitted).   A presumption of undue influence arises "if the plaintiff shows by a preponderance of the evidence that a confidential relationship existed between the defendant and the decedent."   *Id.*   "A confidential relationship is one in which an individual placed trust and confidence in the defendant and there was a great disparity of position and influence in the relationship."   *Id.*   "The existence of a confidential relationship is a question of fact."   *Estate of Campbell*, 1997 ME 212, ¶ 6, 704 A.2d 329.

[¶15]   The court found that there was prima facie evidence of a confidential relationship between Pauline and Donald, Priscille, and Angela based on the following:

> (1) Priscille brought Pauline to Attorney Mary Toole, who Priscille chose; (2) Priscille and Donald acquired power of attorney in 1995; (3) the home was deeded to Priscille and Donald the same year; (4) Pauline's will was changed in 2001, after Priscille and Donald became more involved; (5) Mary Toole drew up the power of

attorney, the deed, and the 2001 will; (6) Pauline depended on Priscille, Donald, and Angela for care, transportation, and management of her finances; [and] (7) Priscille, Donald, and Angela all limited the ability of the plaintiffs to spend time with Pauline and learn information about her wellbeing.

[¶16] Priscille contends that there was insufficient evidence proffered that could support a finding of a confidential relationship, thereby undermining the presumption of undue influence, because some of the instances relied upon by the court date back to 1995, while others have "no temporal framework." Contrary to Priscille's contentions, and viewing the facts in the light most favorable to Robert, the court did not err in finding that Robert made a prima facie case for a confidential relationship. As the court detailed, Priscille and Donald had nearly unfettered control over essential aspects of their elderly mother's life for about five years before her death. Because Priscille, at times, lived with her mother, and both Donald and Priscille together controlled her finances and freedom, Robert offered sufficient evidence to suggest that there was a disparity in position and influence, giving rise to a presumption of a confidential relationship. *See Estate of Campbell*, 1997 ME 212, ¶ 8, 704 A.2d 329 ("That the parties are related by blood or marriage may lead a court to find that a confidential relation[ship] exists, where there is evidence as to trusting and where the blood or family relationship is in a close degree so that the imposition of great trust and the letting down of all guards

and bars is natural." (quotation marks omitted)).  Thus, Robert adduced prima facie evidence of an intentional interference through undue influence.

[¶17]  Robert argues that because the court found that he had established a prima facie case of a confidential relationship, the court was thereby precluded from entering a summary judgment in favor of Donald, Priscille, and Angela.  To that end, Robert relies on the burden-shifting framework providing that once a confidential relationship has been established, the burden shifts to the opposing party to prove that the transfer was "entirely fair and that it was not affected by undue influence."  *See Albert v. Albert*, 2015 ME 5, ¶ 9, 108 A.3d 388; *DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me. 1995) ("When, however, a confidential relationship between the parties to a deed, gift, contract, or the like is shown to exist, the burden shifts." (footnote omitted) (quotation marks omitted)); *see also Morrill*, 1998 ME 133, ¶ 5, 712 A.2d 1039 ("[T]he law seeks to ensure that transfers . . . are the true intent of the grantor and not the product of fraud or undue influence on the part of the grantee.").  The burden shifted from Robert to Donald, Priscille, and Angela once Robert adduced prima facie evidence of a confidential relationship, and the court found that the appellees were unable to defeat that presumption.

[¶18]  Contrary to Robert's contention, however, the appellees' failure to defeat the presumption after the burden had shifted did not preclude the court from

entering a summary judgment in their favor. We have made clear that where a defendant moves for summary judgment, the burden is on the plaintiff to adduce prima facie evidence as to *each element* of the claim. *Lougee Conservancy*, 2012 ME 103, ¶ 12, 48 A.3d 774; *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 ("To withstand a motion for a summary judgment, the plaintiff must establish a prima facie case for each element of her cause of action. If a plaintiff does not present sufficient evidence on the essential elements . . . the defendant is entitled to a summary judgment." (quotation marks omitted)). Thus, although Robert benefitted from the burden-shifting framework as it relates to the undue influence element of tortious interference with an expectancy of an inheritance, Robert was not relieved of his burden of adducing prima facie evidence as to the remaining elements, including that the appellees were the but for cause of a loss of an expectancy interest.

B.    Reasonable Certainty of Expectancy

[¶19]  With regard to the third element of a claim for tortious interference with an expectancy of inheritance, we have stated that

> [t]here can be recovery only for an inheritance or gift that the other would have received but for the tortious interference of the actor. This means that, as in other cases involving recovery for loss of expectancies . . . there must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator or that the gift would have been made inter vivos if there had been no such interference.

*Plimpton v. Gerrard*, 668 A.2d 882, 886 (Me. 1995) (quotation marks omitted). Additionally, "[i]n order to demonstrate to a reasonable certainty that the inheritance would have been received but for the actions of the tortfeasor, the plaintiff must present evidence on the source, nature and extent of the expected inheritance." *Morrill*, 1998 ME 133, ¶ 8, 712 A.2d 1039. Of particular relevance is evidence of a transfer of a parent's property out of his or her ownership or control during the parent's lifetime. *Id.*

[¶20] Robert's opposition to the statements of material fact was supported by his own affidavit and those of some of his siblings. A party may rely on the affidavits of other parties to establish or dispute material facts, *see Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶ 19, 864 A.2d 169, if the affidavit satisfies the requirements of M.R. Civ. P. 56(e), including a showing that the affiant has personal knowledge of the fact being asserted, *see Beneficial Maine Inc. v. Carter*, 2011 ME 77, ¶ 15, 25 A.3d 96 (concluding that an affidavit was inadequate because it was not based on personal knowledge).

[¶21] The court found that Robert "likely" satisfied his burden regarding the extent of the expectancy because, although the references were vague, "there is evidence in the record that [Robert and his other siblings] were at some time beneficiaries to non-probate devices and bank accounts." However, the court

concluded that Robert failed to show that any particular actions by Donald, Angela, and Priscilla were the "but for" cause that deprived him of an expectancy; the court noted that the affidavits in support of the statements of material fact were insufficient because they relied largely upon on inadmissible hearsay and were ambiguous as to whether the assertions were actually based on personal knowledge.

[¶22] The affidavits submitted by Robert and his siblings contain numerous instances where the affiant's assertion was either based on inadmissible hearsay or lacked a basis of personal knowledge. For instance, Robert sought to offer vague contentions that his mother "would talk about signing paperwork, which she could not explain, at the insistence of Donald and Priscille." As the court found, this is inadmissible hearsay because it would qualify as a fact remembered, not a statement of intent. *See* M.R. Evid. 803(3); *Shepard v. United States*, 290 U.S. 96, 105-06 (1933) ("Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored."). Other aspects of supporting affidavits were also vague and seemingly purposefully phrased to obscure whether there was personal knowledge or how certain facts came to be learned, despite ample opportunity during discovery to gather these facts with particularity. In his affidavit, Robert

contends that he "at one time saw paperwork" about certain assets and that he "ended up learning that there had been several checks made out to [Priscille's child's college]," but provided no further detail. Robert also asserted, "I began to get the idea that Donald and Priscille were doing some things with [Pauline's] finances that were not right. I thought there was a chance that they were steering money into a college account for one grandchild, but I was not sure." Robert further stated that he was "not sure what happened. It appears [Priscille and Donald] only needed [Pauline] to sign one piece of paper and they were able to empty many accounts."

[¶23] Although the affidavits submitted by Robert and his siblings appear to be heartfelt and sincere in their assertions of beliefs of wrongdoings, they are vague, lack a basis for personal knowledge, and are largely based on inadmissible hearsay, and are thus insufficient to constitute prima facie evidence of causation as the court concluded. Robert's argument is premised on the notion that Pauline was wealthier than her estate actually amounted to, but Robert failed to show with particularity the accounts or other assets that Pauline allegedly held at the time of her death. To the extent that some of those assets were liquidated during Pauline's lifetime, Robert also failed to show that Donald, Priscille, and Angela were the "but for" cause of his loss of an expected inheritance. Although there is a presumption that Donald, Angela, and Priscille were in positions of influence in

Pauline's life as a result of the confidential relationship, in the absence of admissible evidence that they were the cause of any claimed loss, Robert cannot establish a prima facie case for tortious interference with an expectancy interest. Thus, the trial court properly granted the motion for summary judgment in favor of Donald, Priscille, and Angela.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Daniel R. Warren, Esq., Jones & Warren, P.A., Scarborough, for appellant Robert M. Cote

Julia G. Pitney, Esq., and Michael T. Devine, Esq., Drummond & Drummond, LLP, Portland, for appellees Donald R. Cote and Angela Cote

Daniel L. Cummings, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellee Priscille J. Cote

**At oral argument:**

Elizabeth Valentine, Esq., Maine Community Law Center, Portland, for appellant Robert M. Cote

Julia G. Pitney, Esq., for appellees Donald R. Cote and Angela Cote

Daniel L. Cummings, Esq., for appellee Priscille J. Cote