STATE OF MAINE                                      SUPERIOR COURT
ANDROSCOGGIN, ss.                                   CIVIL ACTION
                                                    DOCKET NO. CV-20-36

DEC 7 '21 P4:21
ANDRO SUPERIOR COURT

BARTOLO FORD,

          Plaintiff

v.                                         ORDER ON MOTION FOR
                                           SUMMARY JUDGMENT
MARTIN J. FORD, IV,

          Defendant


          The matter before the court is Defendant Martin Ford, IV's, ("Marty") Motion for

Summary Judgment. For the following reasons, the motion is granted.


Introduction

          On March 6, 2020, Plaintiff Bartolo Ford ("Bart") filed a civil complaint against Marty

alleging tortious interference with an expectancy. Marty and Bart are brothers, and the adult sons

of Martin Ford, III ("Martin, III"). Martin, III died on October 1, 2019. Bart was omitted from all

of Martin, III's wills. In this action, Bart asserts he reasonably expected an equal legacy from

Martin, III's estate, but that Marty interfered with his legacy. On July 27, 2021 Marty filed the

pending motion for summary judgment.


Facts Not in Dispute

          Bart and Marty are brothers and the sons of Martin, III. (D. S.M.F. ¶ 1, 2). Marty had a

daughter named Marie, who Martin, III help raise. (P.S.A.M.F. ¶ 1). Prior to his death, Martin,

1

III had executed wills on October 25, 2006, May 31, 2011, March 14, 2013, and March 3, 2016, and executed a codicil on November 29, 2018. (D.S.M.F. ¶4, 5). The 2006 will divided Martin, III's estate between Marty and Marty's daughter, Marie. (P.S.A.M.F. ¶ 23). In the 2011 will, Marie was removed as a beneficiary. (P.S.A.M.F. ¶ 24). In the 2016 will, Marty was the beneficiary of the entire, but for some jewelry identified for Marie. (P.S.A.M.F. ¶ 25). The 2018 codicil removed Marie entirely, and Marty was the sole beneficiary of Martin, III's estate. (P.S.A.M.F. ¶ 26). Neither the 2016 will nor 2018 codicil had a written statement or list to dispose of items of tangible property. (D.S.M.F. ¶ 8). All of Martin, III's wills and codicil were prepared with the assistance of an attorney. (D.S.M.F. ¶ 9). Marty assisted Martin, III in attending Martin, III's appointment with the various lawyers who drafted the wills and codicil, but there is no admissible evidence that Marty was present during Martin, III's meeting with the lawyers. (D.S.M.F. ¶ 10; P.R.D.S.M.F. ¶¶ 9, 10; D.'s Reply ¶ 2). Bart was expressly omitted from all of these wills and codicils, and Bart was aware that he had been so omitted prior to Martin, III's death. (D.S.M.F. ¶ 6, 7). Martin, III died on October 1, 2019. (D.S.M.F. ¶ 3). The 2016 will and 2018 codicil were administered in probate court in 2019 and 2020, Marty was appointed personal representative, and Martin, III's estate was closed on December 3, 2020. (D.S.M.F. ¶¶ 22-24).

In the years prior to his death, Martin, III suffered from a number of health issues. (P.S.A.M.F. ¶¶ 3 through 12). Marty was the primary person assisting Martin, III with these health issues. (Id.).

In August, 2019, Martin, III consulted his attorney about whether to change his will to include Bart. (D.S.M.F. ¶ 19; P.R.D.M.F. ¶ 19). The attorney advised Martin, III not to change his will and instead give Bart whatever property he wanted Bart to have while he was still alive.

2

(Id.). Martin, III did not change his will. (Id.). Before his death, Martin, III identified to Bart a number of items of personal property he wanted Bart to have. (D.S.M.F. ¶20; P.S.A.M.F. ¶ 29). None of the items were delivered to Bart, and he never took possession of any items of personal property before Martin, III's death. (D.S.M.F. ¶ 20; P.S.A.M.F. ¶ 30).

Standard

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. City Mortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." M.R. Civ. P. 56(h)(4). In order to controvert an opposing party's factual statement, a party must "support each denial or qualification by a record citation." M.R. Civ. P. 56(h)(2).

For a claim of tortious interference with an expectancy of an inheritance, to survive a motion for summary judgment, the plaintiff is required to establish a prima facie case for each of the following elements:

(1) the existence of an expectancy of inheritance;

(2) an intentional interference by the defendant through tortious conduct, such as fraud, duress, or undue influence;

3

(3) a reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference; and

(4) damage resulting from that interference.

*Cote v. Cote,* 2016 ME 94, ¶12.

Regarding the second element, an intentional interference can be shown through the exercise of undue influence. *Cote,* ¶ 14, citing *Morrill v. Morrill,* 1998 ME 133, ¶ 7. Undue influence is defined as unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relationship between them is justified in assuming that the person will not act in a manner consistent with his welfare. *Id.* A presumption of undue influence arises if the plaintiff shows by a preponderance of the evidence that a confidential relationship existed between the defendant and the decedent. *Id.* A confidential relationship is one in which an individual placed trust and confidence in the defendant and there was a great disparity of position and influence in the relationship. *Id.*

Regarding the third element, in order to demonstrate to a reasonable certainty that the inheritance would have been received but for the actions of the defendant, the plaintiff must present evidence on the source, nature and extent of the expected inheritance. *Morrill,* 1998 ME 133, ¶ 8. That evidence may include the intestacy of the parents, the existence and content of any previous or existing will, and the previous transfers of property out of the parent's ownership or control during their lifetimes. *Id.* Stated otherwise, there must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator or that the gift would have been made inter vivos if there had been no interference. *Plimpton v. Gerrard,* 668 A.2d 882, 886 (Me. 1995).

4

Discussion

1. Existence of expectancy on an inheritance.

This case is distinguishable from some of the leading cases on this topic (see *Morrill v. Morrill*, 679 A.2d 519 (Me. 1996); *Morrill v. Morrill*, 1998 ME 133; and *Cote v. Cote*, 2016 ME 94) in that in this case Martin, III had written several wills over the years, and not one of them provided for Bart. In addition, to whether he had an expectancy, Bart was aware well prior to Martin's death that he was not included in the will. Bart's own testimony only goes so far as to state that Martin, III, after speaking with his attorney, wanted to give Bart some items of personal property, inter vivos gifts. But Bart never took delivery or possession of those items. The inter vivos gifts were not completed, but this does not change those items into legacy or an expected inheritance. Bart asserts he did not take the items his father wanted him to have "..because he was afraid of being accused of being a thief.." by Marty. (P.S.A.M.F. ¶30). But this was Bart's decision, based on his apparently his own subjective beliefs, with there being no proof on this record that Marty actually interfered with the making of the gifts.

Otherwise, Bart asserts he expected to receive a parcel of real estate from Martin, III and that Marty was to divide the estate. (See P.S.A.M.F. ¶¶27, 28; P.R.D.S.M.F. ¶ 21). Bart's assertions rely on statements that Martin, III supposedly made prior to his death. The court fails to discern how these statements could be admissible at trial. Pursuant to M.R.Evid. 803(3), not excluded by the hearsay rule are statements "..of the declarant's then existing state of mind, emotion, sensation, or physical condition such as intent, plan, motive......but not including a statement of memory or belief.." Bart has not offered any evidence showing Martin, III expressed an actual intention to change his will or a future intention to instruct Marty to make any dispositions to Bart. What Bart offers regarding the real estate is a very vague conversation

5

with his father about the real estate in Topsham. (See P.S.A.M.F. 28; *Bart depo*, pp. 48-51). In addition to being vague, those conversations do not rise to a statement of intent or plan, and would be inadmissible hearsay. See *Cote v. Cote*, 2016 ME 94, ¶ 22.

In *Morrill v. Morrill*, 679 A.2d 519, 521 (Me. 1996), the Law Court stated "...simply by proving that he is their child and therefore the a natural recipient of his parent's bounty, *Gardner* has established an expectancy of inheriting a portion of his parent's estate." Accordingly, it would be easy to conclude Bart has made a prima facie case for the first element. However, the ruling in *Morrill I* was clarified in *Morrill v. Morrill*, 1998 ME 133, ¶ 9, where the Law Court stated "..the plaintiff has the burden of proving both the existence and extent of the expectancy. If the plaintiff fails to offer evidence of the existence and extent of the expectancy, the mere fact of parental relationship would be insufficient to establish a prima facie case of tortious interference with an expected inheritance." In this case, although Bart is Martin, III's son, the evidence is not in dispute that Martin, III told Bart he spoke with his attorney, and pursuant to that conversation Martin, III was not going to change his will, but instead give to Bart while he was still alive whatever items he desired. See *Dow v. Dickinson*, 2007 Me. Super. LEXIS 10.

2. Intentional interference by the defendant through tortious conduct, such as fraud, duress, or undue influence.

For the purposes of summary judgment, Marty concedes a confidential relationship existed between he and Martin, III. But Marty asserts he has met the shifting burden of proof and proven that the transfer was entirely fair and that it was not affected by undue influence. *Cote v. Cote*, 2016 ME 94, ¶ 17. The facts establish Marty and Martin, III were close, closer than Bart was with his father, and they also show Marty was the primary person assisting Martin, III. Although Bart was re-establishing his relationship with his father, the court can find that Martin,

6

III relied upon Marty. And although Marty may not have physically been in the room when Martin, III met with his attorneys, Martin, III relied upon Marty to attend the appointments. The court finds a confidential relationship existed. The record also contains evidence that suggests Martin, III made reasonably large transfers or gifts of money to Marty. (See Defendant's Exhibit 4). Although at a trial Marty could possibly meet his burden of persuasion that Martin, III was not subject to undue influence, the court finds Bart has made a prima facie case of this element.

3. Reasonable certainty that the expectancy of inheritance would have been realized but for the defendant's interference.

On this element, Bart fails to make a prima facie showing. As previously stated, in order to demonstrate to a reasonable certainty that the inheritance would have been received but for the actions of the defendant, the plaintiff must present evidence on the source, nature and extent of the expected inheritance. *Morrill*, 1998 ME 133, ¶ 8. That evidence may include the intestacy of the parents, the existence and content of any previous or existing will, and the previous transfers of property out of the parent's ownership or control during their lifetimes. *Id*. Stated otherwise, there must be proof amounting to a reasonable degree of certainty that the bequest or devise would have been in effect at the time of the death of the testator or that the gift would have been made inter vivos if there had been no interference. *Plimpton v. Gerrard*, 668 A.2d 882, 886 (Me. 1995).

In his memorandum, Bart does not dispute that he was never provided for in any of Martin, III's wills, nor does he dispute he knew that fact prior to his father's death. Bart's theory is that an original will left everything to Marie, and Marie was to divide the estate between Marty, Bart, and herself, but that actions taken by Marty influenced Martin, III to remove Marie from the plan. There is simply no evidence to support this scheme. Rather, what the

7

uncontroverted evidence does show is that Martin executed five wills and codicils between 2006 and 2018, and none of them provided for Bart. But more problematic for Bart is that in 2019 Martin, III consulted with his attorney about whether to include Bart in his will, and the attorney advised Martin, III to simply make whatever gifts to Bart that he wanted to while he was still alive. Bart chose not to accept any items. There is no evidence Marty interfered with Martin, III's effort to make these gifts. And there is no evidence that Marty had any involvement whatsoever in Martin, III"s discussion with his lawyer and the advice not to change his will. Bart has failed to show that Marty interfered in any way with Martin, III"s decision in 2019 not to change his will. And as previously discussed, Bart's claims that his father told him he wanted Bart to have a piece of real estate and wanted Marty to divide the estate are supported solely by inadmissible hearsay evidence. In summary, Bart has failed to make a prima facie showing of causation.

The entry is

Defendant Martin Ford,IV's Motion for Summary Judgment is GRANTED.

The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: 12/07 , 2021

Harold Stewart, II
Justice, Superior Court

8